Argued March 21, affirmed May 23, 1977

# STATE OF OREGON, *Respondent,*
### *v.*
# STEVEN LEROY DIAZ, *Appellant.*
## (No. 76-1527-C-3, CA 7039)

564 P2d 1066

[ 524 ]

Gary L. Hooper, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Catherine Allan, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee and Richardson, Judges.

RICHARDSON, J.

**RICHARDSON, J.**

Defendant was convicted of criminal activity in drugs, ORS 167.207, for the possession of hashish. The sole issue on appeal is whether the police had a right to seize the hashish. The police entered the residence where defendant was living to execute a search warrant authorizing them to search for the fruits of a residence burglary. While searching the residence the police seized a film canister which contained the hashish. Defendant asserts there was not sufficient information in the search warrant affidavit to support issuance of the warrant. Secondly, he contends, if the warrant was properly issued and the police were properly on the premises, there was no probable cause to believe the film canister contained an illegal drug.

Defendant filed a motion to suppress the evidence (the hashish) and a supplemental motion to controvert the affidavit. The two motions were heard together prior to the trial. The motion to suppress was denied.

A supplementary motion to controvert the contents of a search warrant affidavit is authorized by ORS 133.693(2). If, during the hearing on a motion to suppress evidence obtained by search warrant, the defendant establishes the information presented to the issuing magistrate was not offered in good faith, was not accurate and was not truthful, the court then shall determine if the issuing magistrate could, relying on the accurate parts of the affidavit and disregarding the inaccurate parts, have determined there was probable cause to search. ORS 133.693(5); *State v. McManus,* 267 Or 238, 517 P2d 250 (1973); *State v. Hughes,* 20 Or App 493, 532 P2d 818 (1975). The testimony at the suppression hearing can detract from the affidavit to the extent that it proves inaccuracies, but the testimony cannot add to the affidavit because information known to the affiant or his informers, but not communicated to the issuing magistrate, cannot be the basis of a probable cause determination. *State v. Hughes, supra. See also* ORS 133.545(3). In determin-

ing the validity of this warrant we examine the information contained within the affidavit, excising inaccurate information, to determine if there is probable cause to search the residence where defendant was living.

## THE SEARCH WARRANT

Officer Cain of the Oregon State Police, in the process of investigating a house burglary, submitted the affidavit for search warrant challenged in this case. The affidavit contained no information based on Officer Cain's personal observations but was based solely on hearsay information from three named informants, designated as private citizens, and two unnamed informants also designated as private citizens.

■ Hearsay information in an affidavit supporting an application for a search warrant is appropriate and can be, standing alone, sufficient to establish probable cause to allow a search. *Jones v. United States,* 362 US 257, 80 S Ct 725, 4 L Ed 2d 697, 78 ALR2d 233 (1960). The Supreme Court cautioned in *Jones,* however, that hearsay may serve as a predicate for a warrant only "so long as a substantial basis for crediting the hearsay is presented." 362 US at 269. The analytical framework for determining the "substantial basis" was provided by the Supreme Court in *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964) and further explicated in *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969).[1]

The framework of *Aguilar* for analyzing the

---

[1] ORS 133.545(3) is a codification of the *Aguilar* test. It provides in material part:

"* * * If an affidavit is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained."

*See* the commentary of the Criminal Law Revision Commission, Proposed Oregon Criminal Procedure Code, Final Draft and Report, November, 1972, p. 72.

trustworthiness of hearsay is contained in the following paragraph:

> "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, * * * the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, * * * was 'credible' or his information 'reliable.'" 378 US at 114.

The Supreme Court in *Spinelli* labeled this analytical framework as the "'two-pronged test' of *Aguilar*." Both prongs of the test must be satisfied before the hearsay information may become an ingredient of the probable cause determination.

■■ In assessing the hearsay information to decide if it is trustworthy the magistrate must have sufficient raw data to make an independent judgment of trustworthiness. The data must first disclose the basis of the informant's knowledge, the first prong, so the magistrate may independently determine the weight to give such information in support of a conclusion the sought for evidence exists and in a particular place. Secondly, the data must be sufficient to inform the magistrate of the informant's veracity, the second prong. The veracity determination can be made either from information concerning the informant's credibility or from data supporting a conclusion his information is reliable.[2]

■■ In applying these decisional guidelines to determine the validity of the issuing magistrate's action in granting a search warrant a court must apply some basic standards. An affidavit of probable cause is tested by less rigorous standards than those governing admissibility of evidence at trial. *Spinelli v. United*

---

[2]See an excellent analysis of *Aguilar* and *Spinelli* by Judge C. E. Moylan, Jr., *Hearsay and Probable Cause: An Aguilar and Spinelli Primer*, 25 Mercer L Rev 741 (1974).

*States, supra; McCray v. Illinois,* 386 US 300, 87 S Ct 1056, 18 L Ed 2d 62 (1967). In judging probable cause the magistrate is not to be confined by niggardly limitations or by restrictions on the use of common sense. *United States v. Ventresca,* 380 US 102, 85 S Ct 741, 13 L Ed 2d 684 (1965).

We now turn to the affidavit in this case to determine if it contained sufficient data to satisfy both prongs of the *Aguilar* test.

The first named informant reported that his house had been burglarized on June 6, 1976, and listed numerous items taken in the burglary including stereo equipment, phonograph records, pictures and some clothing. The affidavit contained a complete list and description of the missing items.

The second named informant told the officer on June 16, 1976,[3] he had been in the burglarized residence with the defendant on June 4, two days before the burglary, and that defendant had commented the residents were doing well and that there were a great number of records for the stereo. He also told the officer the defendant was present when the victim said he would be going to Klamath Falls for the weekend.

The information from these two named informants is not challenged in this appeal and will be accepted as truthful and reliable in measuring the affidavit against the requirements of probable cause.

The third named informant was Majorie Diaz, the mother of defendant. On June 25, 1976, she told Officer Cain her son had burglarized a residence from which he took a great amount of property including clothing and household appliances and that he had the property where he lived; the residence named in the warrant. The affidavit did not contain any informa-

---

[3]The affidavit actually shows the date as June 16, 1975. In the context of the balance of the affidavit this is obviously a typographical error and we do not consider it material.

tion as to how she learned the facts she recited to Officer Cain. During the hearing on the motion to suppress it was established she obtained her information from the two unnamed informants.

The information from Majorie Diaz, when evaluated under the first prong of the *Aguilar-Spinelli* test, i.e., the "basis of knowledge" prong, was insufficient to be included in the issuing magistrate's probable cause analysis. There was no data in the affidavit disclosing how she obtained the information from which the magistrate could make an independent evaluation of the weight to be accorded the stated facts. This left the magistrate to speculate as to whether she learned these facts from her own observations, from talking with the defendant or from some other hearsay source. This is clearly not sufficient under the test of *Aguilar* and *Spinelli*.

The first unnamed informant, who we designate as "informant number one" for convenience of analysis, talked to Officer Cain on June 25, 1976.[4] This informant told Cain she had been in the residence where defendant was living while he was there, that she observed approximately 80 record albums, (approximately 80 records were taken in the burglary), a "long haired sheepskin, brown," a multicolored tapestry depicting a scene of buffalo hunting. All of these items fit the description of things taken in the burglary. At the suppression hearing Officer Cain testified he showed her the list of stolen items and she picked out those she saw at defendant's residence. We do not deem this as detracting from her statement set forth in the affidavit. It was an acceptable means used by the officer to determine what she had observed in defendant's residence. She also stated to the officer, as disclosed in the affidavit, that the defendant told her

---

[4]During the suppression hearing it was disclosed that the two unnamed informants were Stella Diaz, defendant's sister-in-law, and Ester Cruz, Stella Diaz's twin sister. Since this information was not included in the affidavit it cannot be included in an analysis of probable cause to sustain the search warrant.

"he had ripped off a residence and had stolen enough property to furnish his house."

The information from informant number one passes muster under the "basis of knowledge" prong of *Aguilar.* The magistrate had before him the exact source of her information. She had personally observed the items in defendant's residence sometime prior to June 25, 1976. Assuming, for the moment, she is a truthful informant, i.e., her veracity is sustainable under the second prong of *Aguilar,* the fact she personally observed the items is sufficient data from which the magistrate may make an independent judgment that her statement about this property is trustworthy. The source of the information that defendant had "ripped off a residence" and had stolen enough property to furnish his house is likewise disclosed in the affidavit. It came to the informant directly from the defendant.

We next must determine if the affidavit contains data from which the magistrate may make a judgment as to informant number one's truthfulness. This requires application of the second or "veracity" prong of *Aguilar.* The affiant, Officer Cain, concluded she was truthful because she corroborated information given by Majorie Diaz. It is true they both gave affiant the same information concerning defendant's burglary of the residence and on the face of the affidavit this appears to be corroboration. However, it was disclosed in the suppression hearing, Majorie Diaz got her information in part from this informant. It is therefore specious reasoning to say Majorie Diaz corroborates this informant.

██ The officer stated his basis for concluding informant number one was truthful as being the corroboration by Majorie Diaz. However, the magistrate is not limited to this stated basis in making his independent determination of the informant's veracity. The magistrate cannot accept the conclusions of the affiant, consequently, the affiant's conclusions are irrelevant

to the magistrate's independent analysis. He may look to the entire affidavit in forming his judgment of veracity. It would be a "niggardly limitation" on the magistrate's duty to require an affiant or informant to state a conclusion followed by a list of reasons. *See Coyne v. Watson,* 282 F Supp 235 (SD Ohio 1967), *cert denied,* 393 US 951 (1968). This would allow the affiant to control the relevancy of information the magistrate may utilize.

■ In examining this affidavit we can determine there was a residence burglary on June 6, 1976, and numerous items of property were stolen and that the stolen items were particularly described in an attachment which formed part of the affidavit. Informant number one pointed out to the officer several items she saw in defendant's residence which matched the description of the items which were stolen. Additionally, she told the affiant the defendant had admitted a residence burglary. From this the magistrate could reasonably infer she was truthfully relating what she saw and what she heard. The police had not learned for the first time from this informant that a crime had occurred. The affidavit discloses this information came from at least one other independent source, the victim. Additionally, informant number two also told affiant that defendant admitted a burglary. With the detail of the property she discovered in defendant's residence and the information that a burglary the police were aware of had been committed and the corroboration of the other unnamed informant the magistrate could reasonably conclude she was not fabricating the story from whole cloth but was in fact truthful in relaying the information. *See United States v. Marihart,* 472 F2d 809 (8th Cir 1972), *cert denied,* 419 US 827 (1974).

The second unnamed informant, "informant number two," was interviewed by Officer Cain on June 22, 1976. She stated the defendant had on June 10, 1976, told her "he had ripped off a private residence and had taken clothing and stereo equipment and that he was going to keep all of it himself and furnish his

house." Our discussion respecting the information from and the information about informant number one applies equally to informant number two. The basis of her knowledge was the defendant who made an admission he had committed a residence burglary. She corroborates and is corroborated by informant number one and her information about the burglary, in addition to coming from the burglar himself, is independently corroborated by the victim's report.

We hold the affidavit contains a substantial basis for determining the hearsay is trustworthy and a proper ingredient of a probable cause analysis. After excluding the statement attributed to Majorie Diaz, we also conclude the affidavit is sufficient to establish probable cause to issue the warrant. The remaining information in the affidavit disclosed there was a burglary, that defendant expressed interest in the victim's property, that he was aware the victim was going to be away the following weekend, that certain of the stolen items were seen in his residence after the burglary and that he admitted a residence burglary involving clothing and stereo equipment. From this the magistrate could reasonably conclude it was probable the stolen property was located at the defendant's residence.

■ Defendant argues for the first time on appeal that the information from the two unnamed informants was too stale to support a conclusion the stolen property was probably still on the premises when the warrant was issued. He cites *State v. Hoffman,* 15 Or App 524, 516 P2d 84 (1973), Sup Ct *review denied* (1974).

The character of the items sought in the search warrant and the statement by defendant he had stolen enough property to furnish his residence and intended to keep the property is sufficient to give rise to a well founded belief the property was still on the premises when the warrant was issued.

[ 532 ]

## SEIZURE OF THE CANISTER

The police in executing the valid warrant were properly on the premises. Neither the film canister nor illegal drugs were listed in the warrant as property the police were authorized to search for or seize. The issue is whether there was probable cause to make a warrantless search and seizure of the film canister and its contents. In making this determination it is necessary to detail the circumstances surrounding execution of the search warrant.

The residence named in the warrant was the residence of Jonetta Ekwall. She testified the defendant was living there and one room was his. When the police arrived to execute the warrant they were admitted by Jonetta Ekwall but the defendant was not at home. During the ensuing search they located some of the property listed in the warrant and also found "a bag of some drugs" on a divider between the kitchen and living room. Approximately one half hour after the search began the defendant returned home and was promptly arrested for receiving stolen property.

When the defendant was being taken from the house to the police car he asked to use the bathroom. The officer took him in the bathroom of the residence and remained with him. When they left the bathroom the officer conducted a patdown search of the defendant's person and handcuffed him. As the defendant and the officer were proceeding down the hall toward the front door the officer observed defendant nudge a 35 millimeter film canister, which was laying on the floor, with his foot toward Jonetta Ekwall. He said words to the effect that this was film they had taken at the river and he wanted her to have it developed. She picked up the canister and put it in her pocket. The officer immediately demanded she give him the canister. The actual words exchanged between her and the officer are in conflict, however, in substance the officer told her he knew what was in the canister and he was going to take it and if she didn't give it up she

would be arrested for possession of its contents. She at first declined but finally opened the canister in the presence of the officer. The canister contained several small foil wrapped packets and a plastic bag of green material. The officer testified he recognized, from his experience, that it was hashish. He seized the canister and its contents.

The officer further testified the film canister was metal, was old and beat up and he knew 35 millimeter film was no longer sold in metal containers of this type. He stated he had seen drugs carried in this type of film canister many times before. Regarding the defendant, the officer testified he had been told by the other officers the defendant was a user of narcotics. In addition he knew drugs had been found in the house.

A warrantless search is per se unreasonable and the state has the burden of establishing such a search is constitutionally valid by a preponderance of the evidence. *State v. Miller,* 269 Or 328, 524 P2d 1399 (1974). This burden encompasses two aspects; first, that there is probable cause to believe a search will disclose incriminating evidence, and second, exigent circumstances justify proceeding to search without first applying for a search warrant. *State v. Poole,* 11 Or App 55, 500 P2d 726, Sup Ct *review denied* (1972). Defendant makes no assertion a warrant should have been obtained prior to seizure of the canister but alleges only there was not probable cause to believe the canister contained illegal drugs.

The officer commencing a warrantless search is conceptually in the same position as a magistrate approaching the issuance of a warrant. Just as a magistrate may only issue a warrant based on information he has before him an officer can conduct a warrantless search based only on information he possesses. If the information he possessed at the time of the search gave him a well-warranted suspicion that drugs were in the canister this is sufficient to sustain the search and seizure. *State v. Willis,* 24 Or App 409,

545 P2d 1392, Sup Ct *review denied* (1976); *State v. Krohn,* 15 Or App 63, 514 P2d 1359 (1973), Sup Ct *review denied* (1974); *State v. Emfinger,* 6 Or App 328, 487 P2d 1393 (1971).

█ We find the information the officer possessed was sufficient to justify a search of the canister and seizure of its contents. He was aware the search of the house had disclosed drugs, that the defendant was a narcotics user, and that drugs are often carried in small film canisters. These factors, coupled with defendant's furtive gesture in nudging the canister toward another person justifiably fueled the suspicion this particular canister contained narcotics. A defendant who is under arrest and being taken away in handcuffs is unlikely to be concerned about having a roll of film developed. It is more likely he was concerned about removing incriminating evidence from the view of the police officer. The canister was old and beat up and the officer was aware film was no longer sold in metal containers. It therefore would appear questionable this particular canister contained film which had recently been used.

Following denial of his motion to suppress the hashish, defendant waived trial by jury and stipulated the evidence received during the motion to suppress could be considered by the court at trial. No other evidence was presented and defendant was found guilty of criminal activity in drugs. Defendant makes no challenge to the sufficiency of the evidence to sustain the charge. The motion to suppress was properly denied.

Affirmed.