# STATE OF OREGON,
*Respondent,*

*v.*

# JERRY PAUL LILLARD,
*Appellant.*

## (J86-1912; CA A42975)

754 P2d 595

Daniel N. Gordon, Eugene, argued the cause for appellant. With him on the brief was Hudson, Kearney & Gordon, P.C., Eugene.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Jens Schmidt, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

### NEWMAN, J.

Defendant appeals his conviction for possession of methamphetamine, a controlled substance. ORS 475.992(4). He assigns as errors that the court denied his motions to suppress evidence that the police seized at his residence and to controvert portions of the affidavit, dated June 25, 1986, for the search warrant. His argument is, in effect, that, whether controverted or not, the affidavit does not show probable cause, principally because it does not establish the veracity of "A," an unnamed informant. Defendant relies on ORS 133.545(4),[1] Article I, section 9, and the Fourth Amendment. With respect to the effect of information in the affidavit from an unnamed informant, the standard is the same under both ORS 133.545(4) and Article I, section 9. *State v. Souders,* 74 Or App 123, 128, 700 P2d 1050, *rev den* 300 Or 112 (1985).[2] We affirm.

In the affidavit, the affiant, a police officer, states that he has had 15 years experience in law enforcement and training in investigation of controlled substances offenses and that he knows that persons who manufacture methamphetamine are likely to keep records in their homes relating to the manufacture and sale of the drug. He states that A had told him that: (1) he had seen methamphetamine in defendant's home at least four times and on one occasion had seen him scrape methamphetamine powder from a rock of methamphetamine and weigh the powder and package it in heat-sealed plastic bags; (2) in April or May, 1986, he had seen

---

[1] ORS 133.545(4) provides:

"The application shall consist of a proposed warrant in conformance with ORS 133.565, and shall be supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that the objects of the search are in the places, or in the possession of the individuals, to be searched. If an affidavit is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained."

[2] When the legislature enacted ORS 133.545(4), *formerly* ORS 133.545(3), it adopted the Fourth Amendment test of *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964), and *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969), with respect to information in an affidavit from an unnamed informant. In 1983, the United States Supreme Court replaced the *Aguilar/Spinelli* test with a less restrictive test under the Fourth Amendment. *Illinois v. Gates,* 462 US 213, 103 S Ct 2317, 76 L Ed 2d 527 (1983). A warrant that meets the requirements of ORS 133.545(4) with respect to information from an unnamed informant will necessarily satisfy the less restrictive federal standard. *State v. Horwedel,* 66 Or App 400, 402, 674 P2d 623, *rev den* 296 Or 638 (1984).

defendant transport glassware used in drug manufacturing in the truck of his neighbor, Simmons, and that defendant said that glassware was to go to Simmons' ranch; (3) Simmons and defendant were "business partners;" (4) he had heard defendant·say that the methamphetamine he made and packaged was mostly shipped to California for sale, that only a few pounds were kept in this area for sale and that both he and Simmons had recipes for making methamphetamine; and (5) about May 1, 1986, defendant told him that he was low on money and it was time to make some methamphetamine.[3]

---

[3] The affidavit states, in part:

"I know that persons who manufacture methamphetamine or P-2-P often have invested several thousand dollars to obtain the necessary glassware, equipment, chemicals, and location. The financial investment will often be divided among several persons, and the proceeds earned from sale of the product will often be split among those people. It is common for people involved in such a manufacturing operation to keep records, notes and other memoranda concerning the operation, and those records are often kept in or near the laboratory, at the homes of persons involved in the operation, or on the persons of those involved, often in note form in their wallets or purses. Further, it is common to find memoranda, letters, and documents addressed to people, or from people, involved in the operation at the scene of the operation.

"\* \* \* \* \*

"I have talked to informant 'A,' and to other police officers, including the officer who I will call 'B.' 'A' and 'B' and the other officers have related to me that about May 6, 1986, 'A' contacted 'B' and told 'B' that he knew of drug activity. \* \* \* I do not want to use 'B's' name because I am afraid identifying 'B' would make it easier for the subjects of this affidavit to identify 'A.' 'A' and 'B' have both told me that 'A' came to 'B' entirely voluntarily, and that 'A' has not been suspected of any illegal activity. I know 'A's' identity and have checked his background and know that 'A' has regular full-time employment, has no computerized criminal history, has a driving record showing no violations, has never been listed as a suspect in any Douglas County sheriff's office case, and has lived in the community for at least 7 years, and I have not found any reason why 'A' would be anything but truthful.

" 'A' has told me that he is acquainted with Jerry Lillard and Flossie Lillard, and that they are married, live near 1890 Central in Sutherlin, and keep fighting cocks, they own a late 1960's, black over blue sedan, and a 1960's, blue, Ford, 4-wheel drive, pickup, and that Jerry Lillard often drives a light blue, Chevrolet, pickup truck, that belongs to Walter Kevin Simmons. 'A' told me that he is also acquainted with Walter Kevin Simmons, who is a business partner to Jerry Lillard, and that since January 1986, Jerry Lillard told 'A' that Walter Kevin Simmons owns a 180 acre ranch near Red Hill. 'A' further said that about May 1, 1986, Jerry Lillard complained to 'A' that Jerry Lillard was low on money and that it was time to make some methamphetamine. 'A' further said that he had seen boxes in the bed of the light blue pickup owned by Walter Kevin Simmons, which is described above, at which time 'A' said that Jerry Lillard had the pickup truck, and Lillard said that the boxes contained 'glassware' which he had picked up in Seattle, and that the glassware was to go to the 'ranch.' 'A' was unsure of the dates, but said he saw the glassware and had this conversation in April or May of 1986. 'A' further said that he has seen methamphetamine in Jerry Lillard's home at least

Defendant asserts that the affidavit does not state "facts showing the informant's 'veracity,' *i.e.,* that he is credible or that his information is generally reliable." *State v. Villagran,* 294 Or 404, 409 n 3, 657 P2d 1223 (1983). Defendant contends that A was criminally involved, because the affidavit reveals that he frequented defendant's residence where controlled substances were allegedly possessed. Accordingly, defendant asserts that A's information must be disregarded, unless it is corroborated, *see State v. Carlile,* 290 Or 161, 619 P2d 1280 (1980), which defendant asserts it is not.

In *Carlile,* the court stated that the circumstances of a particular case may indicate that an informer who admits his criminal involvement, nevertheless, is providing reliable information on this occasion. 290 Or at 167. Here, the affiant recounts that, on the basis of record checks and police observations of defendant's residence, defendant lives where A said he did and the vehicles that A described as defendant's were parked in front of his residence and were registered to him. The affiant also states that he and another officer saw a light blue pickup truck registered to Simmons that was parked in front of defendant's house on several occasions from April through mid-June, 1986. The police also confirmed A's employment and that he had no record of criminal or driving offenses. Defendant argues that all that corroboration is insufficient to establish A's reliability, because the corroborated facts are non-incriminating. Even if that were so, it "alone does not render them worthless for the purpose of establishing the informant's reliability." *State v. Delker,* 26 Or App 497, 502, 552 P2d 1313, *rev den* (1976).

Moreover, the affidavit also corroborates incriminating facts that A related. Police observations of Simmons' pickup truck in front of defendant's residence on several occasions tends to corroborate A's statement that defendant and Simmons were "business partners" and that defendant used the pickup truck to haul glassware for illegal drug manufacture to Simmons' ranch. Telephone records of a telephone call

---

four times, and has seen Jerry Lillard scraping methamphetamine powder from a rock of methamphetamine and then weigh the powder and package it in heat sealed plastic bags. 'A' said that Jerry Lillard told 'A' that the methamphetamine he made and packaged was mostly shipped to California for sale and that only a few pounds is kept in this area for sale. 'A' said that Jerry Lillard said that both he and Walter Kevin Simmons have recipes for making methamphetamine."

on February 20, 1986, from Simmons' residence to the Seattle telephone number of a known major supplier of glassware and chemicals to illegal drug manufacturers and of two calls from defendant's telephone number on May 27 and 28, 1986, to a known drug distributor in Medford tend to corroborate A's statements that defendant told him about May 1, 1986, that he was low on money and that it was time to make some methamphetamine and that he observed defendant transporting glassware in April or May. The affidavit recites sufficient facts to corroborate information that A supplied and to establish his reliability.

■ Defendant argues that A's information was stale, because the affidavit does not state on what dates A saw methamphetamine in defendant's residence or on what date A saw him scrape it into bags. The affidavit states that A reported that about May 1, 1986—seven weeks before the date of the affidavit—defendant said that he was low on money and that it was time to make some methamphetamine. Defendant contends that it was probable that defendant no longer had drugs at his residence. Moreover, defendant asserts that A's statements show that the actual manufacturing operation took place at Simmons' ranch. Therefore, defendant argues, the affidavit fails to show that a search of his residence at the end of June would probably reveal contraband there. The affidavit, however, shows that defendant may have been involved in a continuing operation. Defendant's statement that it was time to make some methamphetamine, the record of telephone calls in February to the glassware dealer and in late May to the drug distributor, the observations of Simmons' truck in front of defendant's residence on several occasions, including in June, and the information from A that Simmons and defendant were business partners, all show that defendant and Simmons probably were engaged in drug production on an ongoing basis.

■ Defendant also argues that the court erred in denying his motion to controvert information that A supplied. He asserts that A "frequented" a place where controlled substances were allegedly used in violation of ORS 167.222, and, accordingly, the affiant was dishonest in stating that he had "not found any reason why A would be anything but truthful." The affiant's statement, however, must be read in context. He recites that records did not show that A had been engaged in

illegal activity. It recounts A's involvement with defendant and his presence while defendant was packaging drugs. A common sense reading of the affiant's statement is that he knows of no reason why A would be untruthful other than A's possible criminal involvement in defendant's activities.

Affirmed.