Argued and submitted August 15, 1988, affirmed June 21, reconsideration denied
September 29, petition for review denied November 30, 1989 (308 Or 593)

STATE OF OREGON,
*Respondent,*

*v.*

PAUL FRASER NUTTALL,
*Appellant.*

(86-1393; CA A45857)

776 P2d 26

Jenny Cooke, Portland, argued the cause for appellant. With her on the brief was Pat Birmingham, Portland.

Brenda J Peterson, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendant appeals his conviction for manufacture and possession of a controlled substance. ORS 475.992. He assigns as errors that the court denied his motions to suppress evidence that the police seized at his residence, to controvert portions of the affidavit for the search warrant and to disclose the identity of an informant. We affirm.

On November 12, 1986, Washington County deputy sheriffs executed a search warrant at defendant's residence and seized 13 pounds of dried marijuana and 463 growing plants. In the underlying affidavit, the affiant, a police officer, stated:

1. On August 22, 1986, he received an anonymous letter stating that defendant "was growing marijuana in a large barn on his property * * * [and] that inside the barn * * * were large halogen grow lamps to help the marijuana grow, * * * that [defendant] did not have to work as a result of the marijuana profits," that the barn was located in Cornelius and that defendant owned an automotive garage in Portland.

2. He spoke with a confidential and reliable informant (CI) during the month of October, 1986:

"That this [CI] stated that the [CI] knows [defendant and where he resides]. The [CI] told me that [defendant] told the [CI] that he grows marijuana in a large barn on his property. The [CI] stated that [defendant owns a particular garage in Portland;] however, the garage is closed down.

"That the [CI] has been in [defendant's garage] in the past and has also observed [defendant] in the possession of processed marijuana, ready for sale. That the [CI] has known [defendant] for a long period of time. That the [CI] has observed processed marijuana and is familiar with its appearance.

"That I know this [CI] to be confidential and reliable as the [CI] has provided me with information in regards to narcotics trafficking in the Portland tri-county area, which I have proven reliable and accurate in every respect, through independent investigation."

3. A named neighbor of defendant had told him that he knew defendant and "that [defendant] built the large metal barn * * * in 1983 and that * * * he has never observed any

signs of automotive work being done on [defendant's] property, nor does [defendant] farm the property or keep livestock animals." The neighbor also said that defendant makes purchases at his store and "always pays for the purchases in cash and always seems to have a large amount of currency in $100 bills."

4. Portland General Electric (PGE) records show that defendant had a separate commercial account for the barn and that the power readings for the account averaged between 7,000 and 8,000 kilowatt hours per month for 1985 and 1986. PGE records for three other automotive garages in Portland, Hillsboro and Cornelius show that two used less than 1,000 kilowatt hours per month and one used over 5,000 kilowatt hours per month.

5. A police detective said that the Portland garage for which defendant had a business license appeared to be vacant and had a "for sale" sign in front of it and that a named informant who worked nearby had not seen any activity at the garage in the past few months.

6. There is "a newer large metal building with a red metal roof and tan metal sides approximately 45 feet by 90 feet in size" on defendant's property. The affidavit states:

"I further observed the building to have two garage doors located at opposite ends on the west side. *Adjacent to the two garage doors on the west side are glass windows that are boarded up.*

"That I observed no automotive work being done at the building; i.e., cars, parts, equipment, oil stains, etc.

"That I also observed no evidence of farming equipment on the property or the caring of livestock." (Emphasis supplied.)

On September 18, 1986, at 7:30 p.m., the barn had "condensation on the exterior * * * of the roof as though the interior was very warm," while "numerous other metal barns in the general area" observed on the same day and at the same time did not have condensation on their roofs.

7. On August 27, 1986, a police officer in the county sheriff's office flew over the property and took photographs that were attached to the affidavit and that show that one of the west windows of the barn was obstructed.

Defendant moved to controvert the statement that "[a]djacent to the two garage doors on the west side are glass windows that are boarded up" on the ground that it was not accurate, truthful or made in good faith. The court denied the motion. ORS 133.693. On appeal, defendant argues that the court erred, because the officer testified at the hearing that he could not see the windows of the barn from the roadway and that he did not observe them from the neighbor's property. If the court erred, its error was harmless. Even if we disregard the statement that the windows were boarded up, portions of the affidavit that we may properly consider, as we state below, show probable cause.

Defendant also contends that he controverted the statement in the affidavit that the CI was known to be reliable because, according to the affidavit, the CI provided "information in regards to narcotics trafficking in the Portland tricounty area, which [had] proven reliable and accurate in every respect, through independent investigation." The court did not err; defendant did not move to controvert that statement either in his motion or at the hearing. Accordingly, defendant did not preserve this contention.[1]

With respect to the motion to suppress, defendant argues that we must disregard the information from the anonymous informant, because the affidavit does not show the anonymous letter writer's veracity and basis of knowledge. Without crediting the information from the anonymous informant, however, the affidavit is sufficient to show probable cause.

With respect to the information that the CI supplied, defendant argues that we should disregard it, even if the officer's statement about the CI's reliability is not controverted, because the affidavit on its face does not show the CI's veracity. The state responds that the CI's veracity can be established both through the officer's statement about the CI's reliability and through facts on the face of the affidavit corroborated by independent police investigation.

---

[1] Defendant argues that the officer contradicted his statement in the affidavit about the CI's reliability because, he asserts, the officer testified at the hearing that he had never used the CI before. The state interprets the testimony differently. Because of our decision, we do not need to discuss the matter.

**1.**     ORS 133.545(4)[2] adopts the test for unnamed informants set forth in *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964), and *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969). The affidavit must state *facts* that show an unnamed informant's basis of knowledge and his veracity (that is, that he is credible or that the information is reliable). *State v. Villagran,* 294 Or 404, 409 n 3, 657 P2d 1223 (1983). Here, the affidavit is sufficient to show that the CI had a basis of knowledge for his information; defendant told the CI that he grows marijuana in a large barn on his property.[3]

**2.**     The magistrate could also find that the CI was credible from the face of the affidavit. The officer said that the CI was known to him to be reliable, because the CI had provided him "with information in regards to narcotics trafficking in the Portland tri-county area, which [had] proven reliable and accurate in every respect, through independent investigation." The statement does not state explicitly when or on how many occasions or with what results the CI supplied information, but it supplies the magistrate with "sufficient raw data to make an *independent* judgment of [the CI's] trustworthiness." *State v. Diaz,* 29 Or App 523, 527, 564 P2d 1066 (1977). (Emphasis supplied.) In *State v. Smith,* 51 Or App 777, 781, 627 P2d 26, *rev den* 291 Or 151 (1981), we held that a statement that the CI "has provided information concerning narcotic activity of persons within the community to both myself and Detective Walsh * * * which we know to be factual information" was sufficient to establish a CI's veracity, because the magistrate could determine from the statement that the CI had supplied officers with information on more than one occasion. Here, the magistrate could reasonably infer from the

---

[2] ORS 133.545(4) provides:

"The application shall consist of a proposed warrant in conformance with ORS 133.565, and shall be supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that the objects of the search are in the places, or in the possession of the individuals, to be searched. If an affidavit is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained."

[3] Defendant argues that the CI's information is stale, because the affidavit does not state when defendant told the CI about about his marijuana growing operation. We disagree. The affidavit shows that defendant may have been involved in a continuing operation of growing marijuana. *See State v. Lillard,* 91 Or App 106, 111, 754 P2d 595, *rev den* 306 Or 416 (1988).

terms "narcotics trafficking" and "in every respect" that the CI had supplied information regarding more than one incident or aspect of the narcotics traffic and that an independent investigation had proven the information reliable and accurate.

3. The CI's statement that defendant had told him that he was growing marijuana in the barn, the neighbor's observations that defendant carried $100 bills, the neighbor's and the officer's observations that defendant did not appear to be running a farming or automotive operation on the property, the facts that a lot of electric power was being consumed in the barn and that one of its windows was obstructed are together sufficient to show probable cause for the search. Accordingly, the court did not err when it denied defendant's motion to suppress the evidence seized at his residence.

Defendant also argues that the court should have granted his motion to disclose the identity of the CI. He does not contend that the identity is essential to a determination of his guilt or innocence, but rather that it is necessary to determine the issue of probable cause for the search. It is not. *See State v. Dunning,* 81 Or App 296, 299, 724 P2d 924 (1986). Accordingly, the court did not err when it denied defendant's motion.

Affirmed.