Argued and submitted August 15, 1990, reversed on appeal; affirmed on cross-appeal
July 24, 1991

STATE OF OREGON,
*Appellant - Cross-Respondent,*

*v.*

ANGELA E. YOUNG,
*Respondent - Cross-Appellant.*

STATE OF OREGON,
*Appellant - Cross-Respondent,*

*v.*

KELLY MAX YOUNG,
*Respondent - Cross-Appellant.*

(88-1315, 88-1316; CA A62227)

816 P2d 612

197-a

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for appellant - cross-respondent in each case. With him on the briefs were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Leland R. Berger, Portland, argued the cause for respondent - cross-appellant in each case. With him on the brief were Forrest N. Rieke, Jon P. Martz and Rieke, Geil & Savage, P.C., Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendants were charged with manufacture of a controlled substance, ORS 475.992(1), and possession of a controlled substance. ORS 475.992(4). Before trial they moved to suppress evidence seized pursuant to a search warrant, to controvert the affidavit submitted for the warrant and to have disclosed the name of an informant who gave information to the affiant. The court allowed the motion to suppress and the state appeals; defendants cross-appeal the denial of the motions to controvert and to disclose the informant. We reverse on the appeal and affirm on the cross-appeal.

The issue on the appeal is whether the information in the affidavit established probable cause to believe that evidence of a marijuana growing operation would be found on defendants' property.

The affiant, a deputy sheriff, submitted the affidavit for the search warrant. After setting forth his experience in narcotics investigations, he recited information that he received from a "confidential reliable informant" (CRI):

> "That the CRI said the CRI was talking with a sixteen (16) year old boy whose name is Kevin Niemela, within the last seven days. That the CRI said Kevin Niemela told the CRI [that] his next door neighbor, whose name is Gordon, steals green growing marijuana from his father's indoor marijuana garden. Kevin Niemela told the CRI that Gordon gives him marijuana and he sells it and splits the money with Gordon. The CRI asked Kevin Niemela where and how much marijuana was growing. Kevin Niemela told the CRI that he had seen it in a green metal pole building and there were rows of plants with lots of 'bud' on them. Kevin Niemela told the CRI the building is located on his neighbor's property and the neighbor's son's name is Gordon."

The affidavit states that the CRI pointed out Gordon's residence, the pole building and Kevin Niemela's residence next door. The affiant checked the school records and confirmed that Gordon is 13 years old, is the son of defendants and lives with them next door to Niemela, whom the affiant knew to be the stepson of Tom Galloway and who lives next door to defendants.

The affiant listed the power consumption for the last 12 months for defendants' residence that he had obtained from the power company and was told by a power company employee that "in her professional opinion this consumption is uncommonly excessive for an electrically heated home even with a large shop." She also told him that the electric service to defendants' property could support two separate breaker panels. Affiant checked with the county tax assessor's office and learned the size of defendants' house and the pole building. Clatskanie police officer Kuehl told affiant that two unnamed citizens had told the officer that another person had showed them some green marijuana that the person said had been supplied by Niemela.

The trial court, in its written order, concluded:

"1. That the affiant's attempt to corroborate the CRI's information regarding the defendants by contacting the PUD to discover the defendants' power consumption failed to include in the affidavit any indication that the person contacted at the PUD knew what she was talking about when she told the affiant how many circuit breaker panels could be operated through the defendants' meter or what the significance is of the amount of kilowatt hours used;

"2. That although the CRI told the affiant that he spoke with the named informant, Kevin Niemela, seven days before speaking with the affiant, the CRI failed to disclose to the affiant when the named informant saw the operation ongoing, and failed to disclose to the affiant when it was that the named informant said he received marijuana from defendants' son, and failed to disclose when the named informant saw or did anything that was significant to the issuance of the warrant;

"3. That the corroboration the affiant received from Sgt. Kuehl related only to the fact that the named informant is a dealer in marijuana but failed to disclose to the affiant what Niemela's source of the marijuana is;

"AND THE COURT CONCLUDES AS A MATTER OF LAW:

"1. That the corroboration of the unnamed informant's information, is insufficient in the following particulars:

"a. That although power consumption is useful corroborating information, the above-described deficiencies render the corroboration from the PUD insufficient as a

matter of law to corroborate the named informant;

"b. That the information the CRI related to the affiant from the named informant was 'stale' as a matter of law;

"c. That the corroborating information from Sgt. Kuehl corroborated only that the named informant deals marijuana and does not, as a matter of law, corroborate the CRI's information that the defendants were growing marijuana on their property;

"2. As a matter of law, the affidavit fails to state probable cause to believe that evidence of the crime of Manufacturing A Controlled Substance, Schedule I: marijuana would be found on defendants' property at the time the warrant was issued."

In determining whether an affidavit is sufficient to support a search warrant, the issuing magistrate must decide whether there is reason to believe that the facts stated are true and whether the facts and circumstances, if true, are sufficient to establish probable cause to justify the search requested. *State v. Villagran,* 294 Or 404, 657 P2d 1223 (1983). Our review, like that of the trial court, is limited to a determination whether the "magistrate could conclude, based on the facts and circumstances shown by the affidavit, that there was probable cause to believe that the search would discover things specified in the affidavit in the places requested to be searched." *State v. Villagran, supra,* 294 Or at 408. There is a preference for searches incident to warrants and reviewing courts ought not adopt a negative approach toward warrant applications, but should review them in a common sense nontechnical manner. *United States v. Ventresca,* 380 US 102, 85 S Ct 741, 13 L Ed 2d 684 (1965); *State v. Mellinger,* 52 Or App 21, 627 P2d 897 (1981). The issuing magistrate's determination should be paid great deference by reviewing courts. *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969).

Under ORS 133.545(4), an application for a search warrant must be supported by

"one or more affidavits particularly setting forth the facts and circumstances tending to show that the objects of the search are in the places, or in the possession of the individuals, to be searched. If an affidavit is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any

unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained."

That is a codification of the test of search warrant affidavits derived from *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964), and *Spinelli v. United States, supra.* The two-pronged *Aguilar/Spinelli* formulation is that the affidavit supporting a search warrant must demonstrate an unnamed informant's veracity and the basis of the informant's knowledge. *State v. Horwedel,* 66 Or App 400, 674 P2d 623, *rev den* 296 Or 638 (1984). The veracity component can be demonstrated by facts showing either that the informant is credible or that the information supplied is reliable.

■     The basis of knowledge component serves to give the issuing magistrate a basis for determining the weight to give the information supplied by the informant. The basis of the CRI's knowledge was the conversation with Niemela and, additionally, the fact that the CRI had met Gordon Young. That was a sufficient basis for the issuing magistrate to give weight to the CRI's statements, assuming that the CRI was credible or that the information was reliable.

■     There was information in the affidavit from which the magistrate could conclude that the CRI was credible. Credibility was evidenced by the affiant's recitation that the CRI had provided information within the past year that had proved to be accurate. That history is a sufficient basis for the magistrate to conclude that the CRI was credible. *State v. Nuttall,* 97 Or App 285, 776 P2d 26, *rev den* 308 Or 593 (1989); *State v. Strubhar/Jackson,* 82 Or App 560, 728 P2d 928 (1986), *rev den* 302 Or 657 (1987). The CRI's credibility was buttressed by the independent investigation of some of the details by the affiant. He corroborated that the houses pointed out by the CRI as the residences of Niemela and Gordon in fact belonged to their parents. He confirmed that the CRI's statement that Gordon was a 12 or 13 year old boy by checking the school records and the CRI's description of Niemela through affiant's personal knowledge of his family. As we pointed out in *State v. Hermach,* 53 Or App 412, 420, 632 P2d 466, *rev den* 291 Or 893 (1981):

"Police corroboration which does not directly relate to the

circumstances establishing probable cause is as demonstrative of 'present good performance' and as relevant to establishing the informant's veracity as is corroboration of the criminal activity itself."

■■ However, the fact that the CRI's veracity, as well as the basis of the CRI's knowledge, is established does not give the magistrate a basis for crediting the information that the CRI received and in turn recited to affiant. All that the veracity of the CRI establishes is that the magistrate can believe that he was truthful when he told the affiant that Niemela had given him the information. The CRI's veracity does not vouch for the veracity of Niemela or the reliability of the information that he furnished. If a credible informant is not offering direct observations, but hearsay from another source, that informant is merely a conduit for information. *See State v. Alvarez,* 308 Or 143, 776 P2d 1283 (1989).

■ In *State v. Farrar,* 309 Or 132, 786 P2d 161 (1990), the court reviewed a search warrant affidavit that, *inter alia,* contained hearsay from two named "informants." The court said:

> "Where the information in the affidavit is provided by a named informant, as in the instant case, the *Aguilar/Spinelli* standard is not required by [ORS 133.545(4)] or by the Oregon Constitution. *See State v. Montigue,* 288 Or 359, 605 P2d 656, *cert den* 449 US 846 (1980)." 309 Or at 144.

*But see State v. Carlile,* 290 Or 161, 619 P2d 1280 (1980). In *Farrar,* the appropriate analysis of hearsay from a named declarant was extracted from *State v. Villagran, supra,* which also involved a named hearsay declarant. Although the Supreme Court in those two cases seemed to eschew applying the *Aguilar/Spinelli* construct, it utilized a similar analysis. It determined that each hearsay declarant spoke from personal knowledge and that there was information in the affidavits from which the magistrate could determine that the information was reliable, because the declarants were credible or the information had been corroborated. In each case, one of the hearsay declarants had spoken to another named person who, in turn, had passed the information on to the affiant. In essence then, we apply the common law test to determine if, under the totality of the circumstances disclosed in the affidavit, the information is sufficiently reliable to

support issuance of a search warrant. *See Illinois v. Gates,* 462 US 213, 103 S Ct 2317, 76 L Ed 2d 527 (1983).

The format of analysis used in *State v. Farrar, supra, State v. Alvarez, supra, State v. Villagran, supra,* and *State v. Carlile, supra,* is appropriate here, because we must determine whether the affidavit contains sufficient information so that the issuing magistrate could determine the basis of knowledge of Niemela, and his veracity or the reliability of the information that he gave.

The fact that Niemela was named in the affidavit has some significance in determining the reliability of the information. *State v. Carlile, supra.* The principal focus is on analyzing his information as hearsay to determine if it is reliable. The affidavit recites that he told the CRI that he had personally observed "rows of plants with lots of 'bud' on them" in the green metal pole building on defendants' property and also told the CRI that he had obtained green marijuana directly from Gordon. That is sufficient to establish the source of Niemela's information and a basis for giving substantial weight to that information.

In his statement to the CRI, Niemela admitted his involvement in the theft and sale of green marijuana from defendants' garden. An admission against the speaker's penal interest has been recognized as a factor bearing on credibility. *State v. Alvarez, supra; State v. Carlile, supra.* Because he made the statement against his interest to a person whom he did not suspect was a police informant, he presumably was not tailoring his statements to curry favor with the police or to avoid prosecution. *See State v. Carlile, supra.* There was a basis for the magistrate to credit Niemela's statements to the CRI.

In addition, his statement that he had sold green marijuana was corroborated in some measure by the information from police officer Kuehl to the affiant that Niemela had supplied green marijuana on a different occasion. The course of that information through several persons dilutes its reliability. However, it may still be used as *some* corroboration of other things in the affidavit. *State v. Christen/ Hankins,* 79 Or App 774, 720 P2d 1303 (1986); *State v. Hasselback,* 55 Or App 281, 637 P2d 1316 (1981), *rev den* 292

Or 825 (1982); *State v. Diaz,* 29 Or App 523, 564 P2d 1066 (1977).

The trial court concluded that the information from Kuehl did not corroborate Niemela's statement that he saw marijuana growing on defendants' property, because it did not disclose where he got the green marijuana. That conclusion may be correct, but the information does corroborate the statement that he has a source for green marijuana.

■ The trial court also concluded that, because the affidavit did not disclose when Niemela saw marijuana growing in defendants' shop or when he received green marijuana from Gordon, the information was " 'stale' as a matter of law." Of course, information is never stale; that phrase is a shorthand description of the analysis about whether or not the evidence sought will be there after the length of time since the event described in the affidavit occurred. The purpose of the analysis is to determine whether, given the time between the event described and issuance of the warrant, there is a reasonable inference that the evidence will be where the affidavit suggests. The length of time is only one factor in the analysis. Another important factor is the character of the crime or the thing to be seized and whether, under the circumstances, the evidence is likely to be moved or consumed. *State v. Diaz, supra.*

■ The affidavit states that the CRI had talked to Niemela within the last seven days. The report of the conversation was phrased in the present tense, *e.g.,* Niemela told the CRI that Gordon *gives* him marijuana that Gordon *steals* from the father's garden and that Niemela *sells* the marijuana and *splits* the money with Gordon. There is nothing in the affidavit that detracts from a common sense reading of the information as describing relatively current activity. In any event, the information is not about possession of a small amount of marijuana that would be consumed in a short period of time, but describes a marijuana growing operation. It is a reasonable inference that such an operation will continue for a considerable period of time. The affiant listed defendants' power consumption over the previous 12 months. Consumption each month was about the same and was described by the employee of the utility as excessive. The affiant said that, on the basis of his experience, indoor growth

of marijuana requires artificial light and "takes months of cultivation before a marijuana plant produces buds." The evidence sought by the warrant was not only the marijuana plants that Niemela saw but evidence of the crime of manufacturing marijuana, including records, implements, lighting equipment and processed marijuana and other durable items of evidence. The information in the affidavit supports an inference that there was a continuing, long term growing operation that was not likely to be moved.

■■ ■■ The trial court concluded that the electric power consumption information was insufficient, because there is "[no] indication that the person contacted at the PUD knew what she was talking about when she told the affiant * * * what the significance is of the amount of kilowatt hours used." Although failure to establish the qualifications of a witness to give an opinion may make the testimony inadmissible at trial, that is not true when judging the sufficiency of an opinion in a search warrant affidavit. The question is not admissibility but whether there is a basis to credit the opinion rendered. The affidavit named the PUD employee and stated that, in her professional opinion, the power consumption was excessive. There is no reason to believe that a power company employee would not have sufficient information to make a comparison and arrive at the conclusion that she did. The power consumption figures were recited in the affidavit, as was the size of defendants' house and the shop. It is doubtful that, given that information, expert analysis is necessary to conclude that the consumption was excessive. In *State v. Christen/Hankins, supra,* the affiant, who was a police officer, stated that the "amounts of power usage are considerably more than normal residential usage." 79 Or App at 777. There was no other analysis of the power usage in the affidavit in that case, and we found the affiant's opinion sufficient. We conclude that the power usage information and the employee's opinion were reliable and served to corroborate Niemela's statement that he saw marijuana plants growing in the building on defendant's property. The trial court erred in suppressing the evidence seized pursuant to the warrant.

■■■ Defendants cross-appeal the denial of their motion to controvert the affidavit and their motion to disclose the

identity of the CRI. On the motion to controvert, defendants had the burden to prove by a preponderance of the evidence that the information presented to the issuing authority by the affiant was not offered in good faith, was not accurate and was not truthful. ORS 133.693(3). Defendants are limited, however, to a challenge of the affiant's truthfulness and good faith and may not challenge the truthfulness and good faith of an informant. *State v. Hitt,* 305 Or 458, 753 P2d 415 (1988). Defendants called Niemela as a witness, and he testified that he never had a conversation with anyone like that recited by the CRI to affiant. He also stated that he had never been involved in selling marijuana. The court specifically found that he was not a credible witness. The motion to controvert was properly denied. The other contentions in support of the motion do not warrant discussion.

■ Defendants moved to have the identity of the CRI disclosed on the basis that the affidavit failed to establish the "CRI's reliability or credibility" and that there was a question whether the CRI existed. OEC 510(2) provides that the government has a privilege to withhold the identity of an informant. *See also* ORS 135.855(1)(b). OEC 510(4)(c) provides that the privilege is not available

> "[i]f information from an informer is relied upon to establish the legality of the means by which evidence was obtained and the judge is not satisfied that the information was received from an informer reasonably believed to be reliable or credible."

The informant's name may be disclosed, even for an *in camera* disclosure, only if the trial court "is not satisfied that the information was received from an informer reasonably believed to be reliable or credible." The motion to disclose, like the motion to controvert, depended in large measure on whether the trial court accepted the testimony of Niemela. It specifically rejected his testimony. The only other basis urged for disclosure is that the affidavit did not establish that the CRI was credible and that, therefore, defendants had established a basis for believing that the CRI did not exist. The trial court concluded that the CRI was credible and that the information supplied was reliable, and we agree. There is no basis for disclosing the name of the CRI, and the court did not err by denying the motion.

Reversed on appeal; affirmed on cross-appeal.