Argued and submitted August 12, 1992, reversed and remanded September 15, Kapsalis' petition for reconsideration and Scroggins' petition for reconsideration denied December 29, 1993, both petitions for review denied January 18, 1994

(318 Or 326)

# STATE OF OREGON,
*Appellant,*

*v.*

# CHARLES NICHOLAS KAPSALIS,
*Respondent.*

(10-91-03853A; CA A72494 (Control))

# STATE OF OREGON,
*Appellant,*

*v.*

# BONITA SUE SCROGGINS,
*Respondent.*

(10-91-03853B; CA A72495)
(Cases Consolidated)

859 P2d 1157

Ann Kelley, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Wayne E. Allen, Eugene, argued the cause and filed the brief for respondent Charles Nicholas Kapsalis.

David E. Groom, Deputy Public Defender, Salem, argued the cause for respondent Bonita Sue Scroggins. With him on the brief was Sally L. Avera, Public Defender.

Before Richardson, Chief Judge, and Deits and Durham, Judges.

DEITS, J.

Durham, J., dissenting.

**DEITS, J.**

Defendants were charged with unlawful delivery and unlawful possession and delivery of a controlled substance and endangering the welfare of a minor. ORS 475.992; ORS 163.575. The state appeals from the trial court's order granting defendants' motion to suppress evidence seized during a search conducted pursuant to a warrant. We reverse and remand.

Officer Swanson applied for a warrant to search defendants' home at 3920 Marshall Avenue in Eugene on March 15, 1991. In the supporting affidavit, Swanson recited his training and experience in drug investigations and reported that, on March 15, 1991, he had been approached by a confidential informant (CI), whom he had known for the last two months. The CI told Swanson that someone was selling cocaine from 3920 Marshall Avenue and that the CI had been going there daily for the past three weeks to buy cocaine. The CI explained to Swanson that he gave money to a third person, whom he then observed enter the house with the money and return with cocaine. Although the CI never met the seller, the third person told him that the seller was a CPA who worked out of his home. The CI told Swanson that he knew the seller drove a brown BMW. On March 15, the CI was told by the third person that the seller had over a pound of cocaine in the house.

■ Swanson contacted Detective Blackman of the Multnomah County Sheriff's office regarding the CI. The information that he received from Blackman was included in the affidavit supporting the search warrant:

> "Detective Blackman said that approximately two years ago this [CI] provided information to the narcotics unit that was the foundation for at least two search warrants. It should be noted that this information was also used to successfully prosecute and convict two major cocaine traffickers. Detective Blackman added that the [CI], in controlled conditions, was very reliable and that all of their investigations were successful with the [CI's] assistance."

Swanson also discovered that approximately seven months earlier, a man named Rodine had been arrested outside the residence at 3290 Marshall Avenue for possession of cocaine. Rodine told the arresting officer that he had purchased the

cocaine from "Charlie," who lived at that address, and that he had done so several times before, although not within the previous year. He also stated that "Charlie" was an accountant. Utility records listed defendant Charles Kapsalis as the subscriber at the Marshall Avenue address and showed that he was employed as an accountant. Swanson also confirmed that Kapsalis drove a brown BMW. The trial court concluded that the affidavit was insufficient because "[n]either [of the informants'] reliability has been established to satisfy the court," and granted defendants' motion to suppress. The state assigns error to the suppression.

■ ■     To prove the reliability of information from an unnamed informant, the affidavit must set forth facts establishing (1) the reliability of the informant and (2) his basis of knowledge. ORS 133.545(4); *State v. Alvarez*, 308 Or 143, 776 P2d 1283 (1989). The first requirement can be met by showing the informant to be "credible" or by showing that the information provided is "reliable." 308 Or at 147.

■     The court apparently was satisfied that the basis of knowledge prong of the test was met with respect to Swanson's informant. We agree with the trial court that his basis of knowledge was adequately set forth in the affidavit. An informant's knowledge can be based on his own perceptions, actions or conversations. *See State v. Fink*, 79 Or App 590, 594, 720 P2d 372, *rev den* 302 Or 36 (1986). The CI related his experiences with the third person, his knowledge that the seller owned a brown BMW and his own actions in buying drugs at the Marshall Avenue address.

However, the trial court granted defendants' motion to suppress because it concluded that the affidavit did not establish the credibility of the CI. It stated:

> "Det. Swanson's affidavit recites that [the CI] was known to him for two months, but for three weeks of this time the [CI] was buying cocaine from the Marshall [Avenue] address, apparently unknown to Det. Swanson. The court has trouble understanding why the [CI] had not been working with Det. Swanson during this three week period if he was Det. Swanson's [CI]. Again, the court views [the CI's] credibility with this in mind.
>         "* * * * *
> "If, in fact [the CI] had provided some information in the past to Multnomah County detectives, it was at least 2 years

prior. There is no *history of truth-speaking* which would entitle the Eugene police to believe in his credibility. Indeed, the fact that he was 'on his own' for three weeks without supervision from Det. Swanson and apparently without his knowledge casts grave suspicion over his credibility." (Emphasis in original.)

The state contends that the CI's credibility was established because of his past work for the Multnomah County Sheriff's office, which led to the issuance of at least two search warrants and two subsequent convictions.

In *State v. Nuttall*, 97 Or App 285, 776 P2d 26, *rev den* 308 Or 593 (1989), we held that the veracity or credibility of an informant could be established by showing that he had previously supplied information regarding drug trafficking, which had proven "reliable and accurate in every respect, through independent investigation." Although the affidavit in *Nuttall* was not more specific as to how the information was determined to be accurate, or when the information was supplied, we concluded that it was sufficient to allow an independent judgment of the informant's trustworthiness. Similarly, in this case, the affidavit states that the CI provided information leading to at least two search warrants and subsequent prosecutions. The police officer who worked with the CI at that time stated that "all their investigations were successful with the [CI's] assistance." Those factors combine to provide a sufficient basis to conclude that the CI was trustworthy. *State v. Young*, 108 Or App 196, 816 P2d 612 (1991), *rev den* 314 Or 392 (1992); *State v. Strubhar/Jackson*, 82 Or App 560, 728 P2d 928 (1986), *rev den* 302 Or 657 (1987).[1]

The trial court discounted the credibility of the CI, because he waited three weeks to tell Swanson of his daily drug purchases and because his previous involvement with the Multnomah County Sheriff's office had taken place some time ago and under controlled circumstances. However, there is not a requirement that an informant's past activities

---

[1] We do not agree with the dissent that the affidavit fails to set forth sufficient "particularized facts" to establish the CI's reliability. We have not previously required the level of detail as to informant's past activities that the dissent would require. Neither have we held as a general rule that, if an informant has been used in a controlled situation, the informant's reliability is established only for other controlled circumstances.

showing credibility be close in time to the present activities. Further, we have never required that, in order for an informant's credibility to be assessed, the informant must have been involved in a controlled buy.

██ There are additional facts supporting the reliability of the CI's information. An informant's declaration against penal interest is entitled to consideration in determining the reliability of the information provided. *State v. Alvarez, supra,* 308 Or at 149. The weight to be given those declarations depends on the facts of each case. In this case, the CI admitted to buying cocaine over a period of time, which supports the reliability of his information regarding the details of where and how his purchases were made. Swanson also corroborated other information from the CI, which further supports the reliability of the information. *See State v. Dunning,* 81 Or App 296, 724 P2d 924 (1986).

Including the CI's statements, the affidavit established that the CI was buying cocaine from the Marshall Avenue house through a third party, that cocaine had been purchased from that address before from someone named "Charlie," who was an accountant, that defendant Kapsalis resided at the house and his first name was Charles, that Kapsalis worked as an accountant, that the seller drove a brown BMW and that defendant Kapsalis drove a brown BMW. We conclude that the affidavit established probable cause to search defendants' residence at Marshall Avenue for evidence of cocaine distribution.

With respect to the third party, we conclude that he was an unwitting informant, as the CI related statements he made to Swanson. Ordinarily, we would examine the reliability of his information as we did the CI. *See State v. Worsham,* 114 Or App 170, 834 P2d 1033, *rev den* 314 Or 574 (1992). However, in this case, the information supplied by the CI was sufficient by itself to establish probable cause, and the additional facts from the unwitting informant neither added nor subtracted from the totality of the information provided.

We conclude that the affidavit established probable cause to support the issuance of a search warrant. The trial court erred in granting defendants' motion to suppress.

Reversed and remanded.

**DURHAM, J.,** dissenting.

Because Officer Swanson's affidavit does not establish his informant's reliability, I would affirm the trial court. The majority fails to follow the Supreme Court's recent admonition about the need for particularized facts in search warrant affidavits. *State v. Carter/Grant*, 316 Or 6, 10, 848 P2d 599 (1993). In *Carter/Grant*, the affidavit recited that the affiant was trained in identifying growing marijuana and that he saw growing plants in the defendant's window, the color and stem of which were "consistent with" marijuana. The court held that the affidavit was insufficient, because the officer did not *say* that the plants were marijuana or that *he believed* them to be marijuana.

The affidavit in the present case recites that Swanson was told by the Multnomah County detective

"that approximately two years ago this [informant] provided information to the narcotics unit that was the foundation for at least two search warrants. It should be noted that this information was also used to successfully prosecute and convict two major cocaine traffickers."

We should examine the affidavit in a common sense, nontechnical manner. *State v. Tacker*, 241 Or 597, 601, 407 P2d 851 (1965). Even when it is viewed in that light, the affidavit contains fatal flaws. It does not state facts that establish that the informant was credible, or that his past information was reliable. The affidavit does not describe the information that was the "foundation" for two search warrants, or state that the police verified it or believed that it was true. The affidavit does not state how the information was "used" to obtain two convictions, or that anyone found or believed that the information was credible. Vague suggestions that Multnomah County authorities had worked successfully with the informant are no substitute for a statement of facts establishing that he or his information was reliable.

*State v. Nuttall*, 97 Or App 285, 776 P2d 26, *rev den* 308 Or 593 (1989), does not support the majority's result. In that case, the affidavit recites that police had established the reliability of the informant and his information *through an independent investigation*:

"The officer said that the CI was known to him to be reliable, because the CI had provided him 'with information in

regards to narcotics trafficking in the Portland tri-county area, which [had] proven reliable and accurate in every respect, through independent investigation.' The statement does not state explicitly when or on how many occasions or with what results the CI supplied information, but it supplies the magistrate with 'sufficient raw data to make an *independent* judgment of [the CI's] trustworthiness.' *State v. Diaz,* 29 Or App 523, 527, 564 P2d 1066 (1977). (Emphasis supplied.) * * * Here, the magistrate could reasonably infer from the terms 'narcotics trafficking' and 'in every respect' that the CI had supplied information regarding more than one incident or aspect of the narcotics traffic *and that an independent investigation had proven the information reliable and accurate.*" 97 Or App at 290. (Emphasis supplied.)

*Nuttall* is distinguishable because Swanson's affidavit does not state, directly or indirectly, that the informant's information in Multnomah County was reliable, or that authorities verified it through an investigation or otherwise. *Carter/ Grant* says that "[o]missions are of significance when evaluating an affidavit for a warrant." 316 Or at 13. Here, the lack of sworn facts establishing the informant's reliability is a glaring omission.

The statement that "the [informant], in controlled conditions, was very reliable" does not supply the missing facts showing that the informant is credible or that the information supplied is reliable. *See State v. Alvarez,* 308 Or 143, 147, 776 P2d 1283 (1989). The informant was reliable two years ago in *controlled* conditions. That does not suggest that the informant is credible in current, *uncontrolled* conditions. As the trial court noted, Swanson did not send him back to purchase cocaine under controlled conditions. Despite the majority's contrary suggestion, we are not free to disregard the detective's own qualification on his statement about the informant's reliability. Under *Carter/Grant*, this affidavit fails to establish the informant's reliability.

The fact that the informant provided information against his penal interest does "not go far in establishing the informant as a generally credible source." *State v. Carlile,* 290 Or 161, 167, 619 P2d 1280 (1980).

"Police informers, who often are paid or protected informers drawn from the criminal milieu, are 'almost universally

viewed with a jaundiced eye,' especially when they hide behind the cloak of anonymity." 290 Or at 167.

In *Carlile*, the Supreme Court concluded that the fact an informant

"was named and that she had made an admission against her penal interest is an insufficient guarantee of reliability where no partial police corroboration of the information was made." 290 Or at 168.

The information in *Carlile* arguably was corroborated, because the informant had a list of addresses in her home on which the defendants' address appeared. However, the court found this insufficient:

"[T]he list had nothing to do with drug transactions. It was a City of Eugene directory of persons available to do home repairs on a reduced fee basis. * * * The fact that [the informant] possessed such a list hardly corroborates the allegation that cocaine would be found at the [defendants'] residence." 290 Or at 168.

Here, the informant was not named, and the only arguably corroborated fact was that the homeowner drove a brown BMW. To paraphrase *Carlile*, that had nothing to do with drug transactions and does not corroborate the allegation that cocaine would be found at the residence.

I would affirm the trial court.