Argued and submitted September 3, affirmed October 15, 1997, petition for review denied January 27, 1998 (326 Or 390)

## STATE OF OREGON,
*Respondent,*

*v.*

## JOHN HOWARD PAYNE,
*Appellant.*

## (10-96-02193; CA A95607)

946 P2d 353

Shaun S. McCrea argued the cause for appellant. With her on the brief was McCrea, P.C.

Jonathan Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

**RIGGS, P. J.**

Defendant appeals his convictions for possession, delivery and manufacture of a controlled substance. ORS 475.992. He assigns error to the trial court's denial of his motion to controvert information in the search warrant affidavit and to its denial of his motion to suppress evidence obtained after a search of his property. We affirm.

On December 20, 1995, Springfield police searched defendant's property pursuant to a search warrant and seized evidence leading to these charges. The warrant had been issued based upon the supporting affidavit of Officer Lewis. At trial, defendant moved to suppress all evidence obtained during the search and to controvert Lewis' affidavit. The trial court denied both motions. We will not disturb the trial court's findings of fact so long as there is constitutionally sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We review the court's legal conclusions for errors of law. *Id.*

■ Defendant first argues that the information in the affidavit was not sufficient to establish probable cause to issue a search warrant and that the trial court therefore erred in denying his motion to suppress. The information came from statements made to Lewis by a named informant, Scott Mickel, which were described in the body of the affidavit as follows:

"BASIS OF KNOWLEDGE: That on December 20, 1995 I [Lewis] had a conversation with Scott Mickel, at the Springfield police station. Mr. Mickel had been taken into custody for possession of MARIJUANA, as well as unlawful possession of a weapon. The MARIJUANA that Mr. Mickel had was packaged in numerous separate baggies ready for sale. He told me that he had stolen the MARIJUANA that he had on December 17, 1995, after breaking into a shed located at **3325 Olympic Street, Springfield, Lane County, Oregon**. Mr. Mickel said that at the time he entered the shed there were in excess of 20 MARIJUANA plants growing, that were about 1½ feet tall. All of the plants were in individual pots and hooked to an automatic watering system. There were also 2 large growing lights on in the shed. At the time Mr. Mickel entered the shed, he

said that his intention was to steal 3 or four plants. He said that he did strip the leaves off of 3 plants, but then found the packaged MARIJUANA, that he had with him when he was arrested, on a bench in that shed. Mr. Mickel said that he took that instead, because it was already packaged. When I asked Mr. Mickel how he knew that there was a MARIJUANA growing operation at this location, he told me that he had smelled it from the street. He also said that this is not the first time that he has smelled growing MARI-JUANA coming from **3325 Olympic Street, Springfield, Lane County, Oregon**. He told me that almost a year ago he smelled the same smell coming from the location, but did not try to break in at that time. Mr. Mickel said that he knows what MARIJUANA is and what it smells like because he has been a user of the drug for more [than] a year.

"Mr. Mickel said that he did not know who lived at the residence of **3325 Olympic Street, Springfield, Lane County, Oregon**, but had been watching it for a few days prior to breaking into the shed there. He said that he had seen at least 2 subjects go from the trailer house to the shed that the MARIJUANA was growing in. He said that one of the subjects was a male with gray hair. He was not sure if the other person he saw was a male or female. Mr. Mickel also added that all of the windows to the shed containing the growing MARIJUANA are either painted black or boarded shut, so no light escapes and nobody can see in. He added that there is at least one other shed at the premises, but he does not know what it contains. Mr. Mickel told me there are at least 3 vehicles at the location, one being a large truck that has Johns Tree Service painted on [its] side." (Boldface in original.)

The affidavit then described Lewis' personal observations confirming certain of Mickel's statements:

"I then drove Mr. Mickel to the area of the residence so that he could point it out to me in person. He directed me to the residence at **3325 Olympic Street, Springfield, Lane County, Oregon**. Mr. Mickel pointed out the shed that the MARIJUANA was growing in, as well as the truck that he had described. There were also 2 other vehicles parked in the driveway, which I was able to get the license plates of. The first vehicle was a 1991 Oldsmobile sedan, bearing Oregon license RYS 075, the second was a 1983 Chevrolet

pick-up, bearing Oregon license HRK 765. The tree truck, a 1962 International, showed Oregon license RLM 228. A registration check on those vehicles showed that they were all registered to John Howard Payne, born June 29, 1921, at **3325 Olympic Street, Springfield, Lane County, Oregon**. A check of the law enforcement computer also showed that Mr. Payne resides there. His most recent entry was a traffic citation in July of 1995.

"PROPERTY DESCRIPTION: That I have personally viewed the residence at **3325 Olympic Street, Springfield, Lane County, Oregon**. That it can be described as a single wide mobile home, white in color. The mobile home has an expansion added to [its] east end. The residence is located on the south of Olympic street, with the front door facing to the north. The numerals 3325 are attached to the residence, to the right of the front door. There is a carport attached to the south side of the residence, along with a large white shed and a smaller metal shed." (Boldface in original.)

Defendant contends that the affidavit provided an inadequate basis for the magistrate to find that Mickel's assertions were reliable. Where, as here, the information in an affidavit comes from a named informant, our inquiry "is whether under the 'totality of the circumstances,' the information is sufficiently reliable to support issuance of a search warrant." *State v. Brotherton*, 123 Or App 243, 247, 859 P2d 565 (1993) (quoting *State v. Young*, 108 Or App 196, 203, 816 P2d 612 (1991, *rev den* 314 Or 392 (1992)). We look to the affidavit for indicia of the reliability of Mickel's statements.

The fact that an informant is named is one indication that his or her information is reliable, because a named informant is exposed to possible criminal or civil charges should the information prove false. *State v. Farrar*, 309 Or 132, 145, 786 P2d 161, *cert den* 498 US 879 (1990). Another indication of reliability is the fact that Mickel's statements were against his penal interest. By revealing that he had stolen marijuana from defendant's shed, Mickel exposed himself to a charge of burglary in addition to the drug and weapon charges on which he was being held. We have frequently noted that the reliability of a statement is enhanced when it is made against the declarant's penal interest. *See, e.g., Brotherton*, 123 Or at 247-48.

■■ Further, Lewis partially corroborated Mickel's statements, and noted that corroboration in his affidavit. Police corroboration of details from an informant's statements is yet another indication of the statement's reliability. *State v. Strance*, 118 Or App 645, 650, 848 P2d 1226, *rev den* 317 Or 584 (1993). Lewis corroborated the following details from Mickel's statements when he went to defendant's residence: location, the presence of a mobile home on the property, the adjoining sheds and the truck bearing the legend "John's Tree Service." Lewis' check of motor vehicle records indicated that the vehicles on the property were all registered to the owner of the residence, and that the owner was born in 1921, which is consistent with Mickel's description of a man with gray hair. While these details do not by themselves create an appearance of criminal activity on the premises, they are nevertheless relevant to the issue of Mickel's credibility, for

> "[p]olice corroboration which does not directly relate to the circumstances establishing probable cause is as demonstrative of 'present good performance' and as relevant to establishing the informant's veracity as is corroboration of the criminal activity itself."

*State v. Hermach*, 53 Or App 412, 420, 632 P2d 466, *rev den* 291 Or 893 (1981); *see also Brotherton*, 123 Or App at 247; *Young*, 108 Or App at 201-02.

The statement against penal interest made by a named informant, under these facts, is alone sufficient to establish the reliability of Mickel's statements. *State v. Worsham*, 114 Or App 170, 175, 834 P2d 1033, *rev den* 314 Or 574 (1992). The addition of the corroborated facts, although somewhat weak, adds *some* weight to the credibility of the named informant. The trial court did not err in denying defendant's motion to suppress.

■ Defendant further argues that the information in the affidavit was "stale" and could not provide the basis for a search warrant, because three days passed between Mickel breaking into the shed and the issuance of the warrant. That argument is unpersuasive. We have held that information about drug production facilities did not become stale despite the passage of periods of time longer than three days. *See, e.g., State v. Evans*, 110 Or App 46, 59, 822 P2d 1198 (1991)

(warrant for search of suspected methamphetamine lab not stale when based on 10-day-old information). It was not unreasonable for the magistrate to reasonably conclude that defendant's growing operation probably would be intact after three days.

■ ■    Defendant also moved to controvert the affidavit under ORS 133.693(2),[1] because Lewis' affidavit did not include details of an agreement made between Mickel and the Springfield police. That agreement stated that, if Mickel's information proved to be accurate, then he would be cited and released pending hearing, rather than being booked and held until he could furnish bail. When facts have been omitted from an affidavit accompanying an application for a search warrant, "[w]e review the affidavit anew in light of the omitted facts," to determine "whether the warrant would have been issued if a reasonable magistrate had had that information." *Strance,* 118 Or App at 649.

The trial court denied the motion to controvert because the agreement was not of a type that would give Mickel a motive to lie, and thus undermine the reliability of his information. We agree. Mickel was not promised any reduction of charges in exchange for his information. Further, he would not have been released if his statements proved to be false. The omission of the details of the agreement from Lewis' affidavit does not undermine the reasonableness of the magistrate's issuance of the search warrant.

Affirmed.

---

[1] ORS 133.693(2) provides:

"If the evidence sought to be suppressed was seized by authority of a search warrant, the moving party shall be allowed to contest the good faith, accuracy and truthfulness of the affiant as to the evidence presented before the issuing authority only upon supplementary motion, supported by affidavit, setting forth substantial basis for questioning such good faith, accuracy and truthfulness."