Argued and submitted July 7, reversed and remanded December 17, 2003

# STATE OF OREGON,
*Appellant,*

*v.*

# BRETT ALLAN WILLIAMS,
*Respondent.*

## 016023FE; A118181

81 P3d 743

Erika L. Hadlock, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Benjamin M. Bloom argued the cause for respondent. With him on the brief was Hornecker, Cowling, Hassen & Heysell, L.L.P.

Before Haselton, Presiding Judge, and Wollheim, and Brewer, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

The state appeals from a pretrial order granting defendant's motion to suppress evidence found in defendant's home pursuant to a search warrant. The state argues that the trial court erred in concluding that the search warrant affidavit failed to establish probable cause because (1) it did not demonstrate the requisite nexus between a remote marijuana grow site and defendant's residence, and (2) the evidence referred to in the affidavit was stale. We agree with the state and reverse and remand.

In reviewing a trial court's decision on a motion to suppress, we are bound by the court's factual findings if there is evidence in the record to support them. *State v. Stroup*, 147 Or App 118, 120, 935 P2d 438 (1997). When the trial court has made no factual findings, we presume that the court found the facts in a manner consistent with its ultimate conclusion. *State v. Ready*, 148 Or App 149, 153-54, 939 P2d 117, *rev den*, 326 Or 68 (1997). We review the court's legal conclusions for errors of law. *State v. Sopiwnik*, 176 Or App 127, 129, 30 P3d 430 (2001).

With those standards in mind, the facts are as follows. On October 31, 2001, a magistrate issued a search warrant authorizing law enforcement officers to search defendant's property and buildings on that property "for evidence of the crime of possession, manufacture and/or delivery of the controlled substance Marijuana * * *." The warrant was based on the affidavit of a Medford police officer, Walruff. Walruff's affidavit stated that he had been informed by Deputy Rullamas of the Jackson County sheriff's office on July 21, 2001, that Rullamas and another deputy, Burkhart, had seen a 21-plant marijuana grow site located within Jackson County. On August 3, 2001, Burkhart and United States Forest Service Law Officer Dalke installed surveillance cameras to view the grow site and the road leading to it. On October 19, 2001, Rullamas and Dalke returned to the grow site and found that the marijuana had been harvested on October 18. Although the surveillance cameras had captured images of two men harvesting the marijuana, the men's faces were covered. The affidavit stated that one of the men was believed to be defendant.

According to Walruff, the surveillance video showed defendant at the grow site on three other occasions. The affidavit stated that on one occasion defendant was taped "moving chicken wire around the marijuana garden to protect the marijuana plants." Defendant was also seen walking around the grow site. The affidavit detailed the clothing that defendant was wearing on each occasion. The videotape also showed a blue pickup truck, later determined to be defendant's, driving on the road leading to the grow site.

In addition, the affidavit stated that Rullamas saw defendant's truck at defendant's home and recognized it from the surveillance video. Another deputy, King, also observed the truck while patrolling near the grow site on October 18, 2001, the date of the harvest. He recognized it from a dent near the gate latch and a dog box in the truck bed. King made contact with the driver and passenger of the truck. He later identified the driver as defendant by obtaining a photograph from the Department of Motor Vehicles of the owner of the truck.

In the affidavit, Walruff set forth his training and experience that informed his conclusion that evidence of marijuana cultivation and packaging would be found at defendant's residence. Specifically, Walruff asserted that he was aware that marijuana grown at remote sites needs to be dried and processed indoors, that it is common for a person associated with a remote grow site to use his residence for such processing and drying, and that the residence is often also used for weighing, packaging, and sale of the marijuana. Often, marijuana is germinated indoors before being transported to the remote site. The cultivation and sale of marijuana is commonly an ongoing practice lasting for months or years. Walruff asserted that, for those reasons, marijuana can commonly be found at different stages of drying and packaging at the residence of a person involved in growing marijuana at a remote site. Walruff stated that tools and implements used to cultivate marijuana are commonly removed from the grow site and stored at the grower's residence, making it common to find tools and implements in the residence of a grower.

Walruff's affidavit further stated that people involved in the growing and sale of "controlled substances normally have paraphernalia for its use, packaging and manufacture, as well as photographs and papers showing proof of ownership and sales of those controlled substances." Walruff stated that, in his experience, growers keep such records and pictures on their persons, in their vehicles, and at their residences.

Based on Walruff's affidavit, the magistrate issued a search warrant authorizing a search of "the residence, garage, any outbuildings and the premises located at [defendant's property]," as well as defendant's person, and "any vehicles registered to or under the direct control of" defendant. The search was "for evidence of the crime of possession, manufacture and/or delivery of the controlled substance Marijuana, a Schedule I controlled substance." Listed specifically were the clothes worn by defendant in the surveillance materials, chicken wire, marijuana, packaging materials, scales, growing pots, soil, tools, plant cloning documents, records of sale and related paperwork, papers showing conspirators, and communication devices used for trafficking.

On November 1, 2001, officers served the search warrant. They found nine rifles and 686 grams of marijuana as well as drying marijuana plants. Defendant was charged with unlawful manufacture of a controlled substance, ORS 475.992(1)(a); unlawful delivery of a controlled substance, ORS 475.992(2)(a); unlawful possession of a controlled substance, ORS 475.992(4)(a); and three counts of felon in possession of a firearm, ORS 166.270.

Before trial, defendant moved to controvert the affidavit. The trial court denied the motion. Defendant also moved to suppress evidence found during the search of his home. Relying on *State v. Wilson*, 178 Or App 163, 170, 35 P3d 1111 (2001), the trial court granted the motion, concluding that probable cause did not exist, because "the facts in the affidavit in this case 'fail to establish a nexus between drug activity and the defendant's residence, there is no corroboration as to the scale or duration of defendant's drug activities, and the information was stale.' "

We review for errors of law. *State v. Payne*, 150 Or App 469, 471, 946 P2d 353, *rev den*, 326 Or 390 (1997). Here, the ultimate issue is whether the averments of the affidavit in support of the search warrant provided the requisite nexus between the outdoor grow site and defendant's residence that would establish probable cause to believe that evidence of the crimes of possession, manufacture, and distribution of controlled substances would be found in defendant's house.

Defendant asserts that the affidavit contains both inaccuracies and omissions. Defendant also presented similar contentions before the trial court in his motion to controvert. The motion was denied and defendant does not cross-assign error to that denial. Our review of the existence of probable cause in support of the search warrant is therefore limited to the four corners of the affidavit and whether a reasonable magistrate could conclude, based on that affidavit, that probable cause existed. *See State v. Goodman*, 328 Or 318, 325, 975 P2d 458 (1999) ("[D]efendant did not move to controvert any of the statements in the affidavit and does not challenge them here. Accordingly, our inquiry is limited to whether the uncontroverted facts in the affidavit establish probable cause to search defendant's house."); *State v. Evoniuk/Niemi*, 80 Or App 405, 407 n 1, 722 P2d 1277 (1986) ("[B]ecause the motion to controvert was denied and that denial is not raised as error on appeal, we view the affidavit for the search warrant on the basis of information stated within its four corners.").

Resolution of this case involves the interplay among three cases: *Wilson*, *Goodman*, and *State v. Evans*, 119 Or App 44, 849 P2d 539 (1993). The state argues that *Goodman* controls in this case, while defendant argues that *Evans* is controlling and that, under *Wilson*, we should look at evidence beyond the face of the affidavit.

*Goodman* describes the requirements for probable cause when the affidavit seeks a warrant permitting a search of a building for evidence of crimes related to a remote marijuana grow site.

"[T]he affidavit must contain facts and objective observations sufficient to permit a reasonable judge to conclude that there is probable cause to believe (1) that the residents

or owners of the building have some relationship to the growing operation; and (2) that marijuana, tools, or evidence of processing and sale of marijuana probably are in the building for which the warrant is sought."

*Goodman*, 328 Or at 325.

To determine whether the warrant in this case satisfied the first prong of the *Goodman* test, we need only look to *Goodman* itself. To determine whether the warrant satisfied the second prong, however, we consider *Wilson*, *Goodman*, and *Evans*. Defendant argues that the warrant is deficient with respect to both *Goodman* requirements. We disagree.

The affidavit stated that defendant was shown on videotape at least three times at the outdoor grow site, including one occasion when defendant was performing actions consistent with assisting the grow. That evidence is sufficient to show that defendant had "some relationship to the growing operation," *Goodman*, 328 Or at 325, regardless of the affiant's inability to identify defendant as one of the two individuals actually harvesting the marijuana. The affidavit sufficiently satisfied the first prong of the *Goodman* test.

The remaining question is whether the search warrant satisfies the second prong, *i.e.*, whether a reasonable magistrate could conclude that the affidavit established probable cause to believe "that marijuana, tools, or evidence of processing and sale of marijuana probably" were in defendant's residence. *Id.*

In holding that the search warrant affidavit did not sufficiently establish probable cause under *Goodman*, the trial court in this case concluded that "[t]he officer's training and experience is insufficient by itself to establish a nexus" and that defendant's truck does not provide the requisite nexus between the grow site and defendant's residence. Both conclusions relate to the second prong of the *Goodman* test.

In *Goodman*, police officers applied for and were issued a warrant to search the home of a man who was believed to be involved in a marijuana grow. The officers placed surveillance equipment at the entrance to the grow

site, which was concealed by brush. The site was accessible only through that entrance, which led down a 30-foot tunnel to the site. The defendant in that case was seen leaving the garden and concealing the entrance to the tunnel. The officer in *Goodman* discovered that the defendant lived approximately eight and one-half miles from the marijuana grow site. *Id.* at 320-21.

The *Goodman* affidavit went on to recite the officer's training and experience regarding manufacture and distribution of controlled substances and outdoor marijuana grows. The officer stated that, from his training and experience, he knew that, where outdoor grows are involved, evidence that the grower was involved in the manufacture of marijuana can be found in the grower's residence. The officer stated, "I have found controlled substances concealed on the person of the suspect, within the residence in a variety of hiding places, within other buildings on the premises, or buried in containers in the earth or under objects." *Id.* at 321.

The officer averred that, in his experience, cultivation of marijuana plants requires tools for such cultivation, that samples of the plant are dried in the residence of the grower, that marijuana at different stages of growth is present at the residence of the grower, that marijuana plants are commonly started inside before being transferred to a remote grow site, that the harvested marijuana is commonly processed in the grower's residence, and that people who are involved in drug activity almost always retain records of their drug dealings and that those records are often found in residences, in vehicles, or on the person of the involved individual. He concluded, " 'Based on my training and experience I know that more often than not, evidence or fruits of drug or racketeering activity can often be found in the residences of persons involved in such activity * * *.' " *Id.* at 323.

The Supreme Court held in *Goodman* that the affidavit established probable cause for a warrant to search the defendant's residence, noting that "the officer's expertise is used only to provide a criminal law nexus to a series of other, separately verified facts which—absent the officer's explanation—could be understood to be innocent." *Id.* at 328. The officer's testimony was not used without other facts present.

"The first fact linking the garden and the residence is that defendant, whose connection to the garden was demonstrated in the affidavit, lived at the residence to be searched. The fact links the garden and the house; in other words, the facts in the affidavit connecting the garden to defendant and defendant to the house connect the garden to the house. By extension, defendant also provides a link between the house and items of physical evidence from the garden."

*Id.* at 327. The officer's testimony that tools for cultivation and harvest are needed in an outdoor grow and the fact that no such tools were found at the grow site offered additional evidence that such tools would be found in a secure indoor location. *Id.* at 327-28. In *Goodman*, the fact that defendant's residence was located "in the vicinity of the garden" strengthened the nexus between the remote site and defendant's residence. *Id.*

■ The present case shares almost all of those facts with *Goodman*. Defendant lived at the residence to be searched. Defendant's relationship with the remote site has been established. Following the logic of *Goodman*, the grow site and defendant's residence are linked. Additionally, although defendant's residence is further from the grow site than the residence in *Goodman*,[1] Walruff stated in his affidavit that "persons tending a remote marijuana grow remove the implements needed to tend the grow so that the implements are not discovered by others or stolen. The implements are commonly taken to the person/s residence." The affidavit is silent as to whether any tools were found at the grow site.

Defendant argues that *Goodman* is distinguishable and argues that *Evans* is controlling. In *Evans*, a search warrant was issued for the defendants' residence based on the affidavit of a federal agent. The affidavit referred to two marijuana grow sites on federal land where a deputy sheriff and a member of the Oregon National Guard saw one of the defendants tending marijuana plants. They traced the license plate on a truck driven by that defendant and

---

[1] The trial court found that defendant's home and the grow site were approximately 15 to 25 miles apart by road and 10 to 15 miles apart by a straight line.

obtained the address of the defendants' residence. The residence was at least 35 miles from the grow site. *Evans*, 119 Or App at 46. In *Evans*, this court held that there was not a sufficient nexus between the grow site and the defendants' residence, because "most of the officer's knowledge was about common practices of people who grow, *distribute and sell* marijuana. Here, there were no facts indicating that defendants were distributing and selling marijuana." *Id.* at 47 (emphasis in original). We also noted that there were "no facts whatsoever linking the marijuana plants to anything in the residence[.]" *Id.*

■ Defendant, relying on *Evans*, argues that there is not a sufficient nexus between the grow site and defendant's residence because "most of the officers' knowledge was about common practices of people who grow, distribute and sell marijuana" and that there was "not an additional fact supporting probable cause that this particular residence contained any particular evidence." (Emphasis omitted.)

Defendant's challenge to the affidavit based on *Evans* fails in this case because Walruff averred in his affidavit that people who grow marijuana are also involved in the packaging and weighing of marijuana for sale. His testimony is not a general recital of training and experience as to people who sell and distribute marijuana. Rather, his experience is specific to people who grow marijuana at a remote site.

The affidavit in this case also differs from *Evans* in that it recites evidence in addition to Walruff's training and experience statements supporting probable cause that defendant's residence specifically contained evidence: defendant's truck was seen both at the grow site and at his residence. Defendant also argues that unlike *Goodman*, defendant's residence is more than 35 miles from the grow site and, thus, not "in the vicinity of the garden." Although that is true, as discussed above, the proximity of the residence to the grow site is not the only fact linking the grow site to the residence in *Goodman*. In this case, the presence of defendant's truck at the grow site and at his residence provides the factual link necessary to connect the grow site to the residence.

The third case that defendant cites is *Wilson*, which is distinguishable. *Wilson* involved a controlled buy of methamphetamine from the defendant. An informant met with the defendant who sold the informant methamphetamine and told the informant that he, the defendant, had a lot more available and that he would like the informant to sell methamphetamine for him. An officer sought and obtained a search warrant for the defendant's residence based on the controlled buy. The trial court concluded that the warrant was not based on probable cause to believe that evidence of drug activity would be found at the residence. *Wilson*, 178 Or App at 165. We affirmed, identifying three problems. First, the affidavit did not establish a nexus between drug activity and the residence. Second, the affidavit did not provide evidence corroborating the defendant's statements as to the scale or duration of defendant's drug activities. Third, the information in the affidavit was stale. *Id.* at 169-70.

None of those problems exists in this case. As we have discussed, a nexus does exist between drug activity and the residence by virtue of defendant's involvement with the grow site and his living at the residence, as well as the link provided by the presence of his truck at both locations. Also, the affidavit in this case does provide evidence of scale and duration of drug activity. That evidence is in the form of the number of plants present at the grow site, Walruff's training and experience statements that people involved in growing marijuana often have marijuana at different stages at their residences, and that they are often involved for months and years in the growing of marijuana.

As for the staleness problem identified in *Wilson*, defendant argues that a similar staleness issue is present in this case. Defendant argues that the affidavit was signed and submitted two weeks after the date that the marijuana was harvested, thus weakening the "inference that evidence of drug activity would probably be found in defendant's home." *Wilson*, 178 Or App at 170.

We discussed staleness in *State v. Young*, 108 Or App 196, 204, 816 P2d 612 (1991), *rev den*, 314 Or 392 (1992):

"Of course, information is never stale; that phrase is a shorthand description of the analysis about whether or not

the evidence sought will be there after the length of time since the event described in the affidavit occurred. The purpose of the analysis is to determine whether, given the time between the event described and issuance of the warrant, there is a reasonable inference that the evidence will be where the affidavit suggests. The length of time is only one factor in the analysis. Another important factor is the character of the crime or the thing to be seized and whether, under the circumstances, the evidence is likely to be moved or consumed."

Thus, the time between the harvesting of the marijuana and the search of defendant's residence is only one of several factors to be considered in the totality of the circumstances.

Contrary to defendant's argument, the staleness issue presented in *Wilson* differs materially from the staleness issue presented in this case. In *Wilson*, we stated that the affidavit, as controverted, did not set forth the date on which the informant had made the purchase from the defendant. 178 Or App at 170. The staleness issue was not that a time lapse existed between the sale and the issuing of the warrant, but that the affidavit did not make clear how much time had elapsed between the two events.

In this case, nearly two weeks passed between the harvest and the signing of the affidavit. Defendant argues that, because there is no evidence in the affidavit as to how long it takes to dry marijuana, the affidavit does not show that evidence of the marijuana grow would probably be at defendant's residence. Although it may be true that the affidavit does not state how long it takes marijuana to dry, the two-week time lapse does not diminish the probability that other items would be found at the residence. The affiant averred that people involved in growing marijuana are often involved in the process for months or years. Thus, tools and records would be unaffected by the two-week lapse. Additionally, the affiant averred that he had seen defendant wearing a number of different clothing items in the surveillance videos and pictures. Those clothing items would be unaffected by the two-week time lapse. The *Wilson* staleness problem does not exist in this case. There, the controverted affidavit offered no evidence of when the buy occurred. Here,

the affidavit states exactly when the marijuana was harvested.

In sum, the affidavit established probable cause that a link existed between defendant and the grow site and the grow site and defendant's residence. Additionally, the affidavit was not stale.

Reversed and remanded.