Argued and submitted May 26, affirmed November 10, 2004, both petitions for
review denied May 3, 2005 (338 Or 488)

STATE OF OREGON,
*Respondent,*

*v.*

LARRY RAY GAITHER,
*Appellant.*

01C54892; A118534

100 P3d 768

Jamesa J. Drake, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter A. Ozanne, Executive Director, Office of Public Defense Services.

Jennifer S. Lloyd, Assistant Solicitor General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for sexual abuse in the first degree. ORS 163.427. He assigns error to the denial of his motion to suppress statements that he made to his probation officer and a police detective. He argues that the statements to his probation officer were involuntary because they were compelled by a condition of probation that required him to disclose his sexual history and that his subsequent statements to the detective were the result of police exploitation of the illegally obtained statements to the probation officer. We affirm.

The relevant facts are not disputed. In 2001, defendant was convicted of public indecency, private indecency, and endangering the welfare of a minor after exposing himself to a child. He was placed on probation. Among the conditions of defendant's probation were requirements that he "promptly and truthfully answer all reasonable inquiries" of his probation officer, that he fully disclose his sexual history and provide a list of all of his prior victims, that he undergo a polygraph examination to confirm his disclosures, and that he participate in sex-offender treatment.

While in treatment, defendant disclosed that he continued to masturbate to sexual fantasies involving children and that he had contacted minor boys. His treatment provider and probation officer became concerned about defendant's "position in the community." Defendant's probation officer, Harris, requested a meeting with him to determine whether defendant was violating the terms of his probation. During that meeting, Harris asked defendant whether he had committed any previous acts of abuse. Defendant disclosed that he had sodomized A, a 5-year-old boy who lived at defendant's former apartment complex.

Harris reported defendant's disclosure to detective Coates. A month later, Coates arranged to interview defendant. Coates advised defendant of his *Miranda* rights, and defendant indicated that he understood those rights. Defendant again disclosed that he had sodomized A, and he was charged with sexual abuse in the first degree.

Before trial, defendant moved to suppress his statements to Harris on the ground that those statements were made involuntarily and, alternatively, because Harris had failed to advise defendant of his *Miranda* rights before questioning him about prior acts of abuse. According to defendant, the compulsory nature of the probation condition, requiring him to disclose his sexual history and prior victims, either created circumstances under which defendant should have been advised of his *Miranda* rights or, alternatively, was sufficiently compelling that it overrode his free will, regardless of whether *Miranda* warnings should have been given by Harris. Defendant also sought to suppress his statements to Coates as fruits of the original illegal conduct by Harris.

Harris testified at the hearing on defendant's motion. Although Harris testified that he neither told defendant nor led defendant to believe that his probation could be revoked if he exercised his right to be free from compelled self-incrimination or refused to undergo the full-disclosure polygraph examination, he did testify that defendant had a "special condition" of probation that required defendant to disclose all of his prior victims and that "[a]ny refusal to submit * * * a complete list of victims is a violation of probation." Defendant testified that it was his understanding, based on the probationary condition and information from his treatment provider, that he was *required to make a full-disclosure* statement during the polygraph examination and that, if he refused to make that statement, he would automatically go to jail. He also testified that this belief was reinforced by a sign at Harris's desk that stated, in effect, that a probationer who refuses or otherwise fails to take a mandatory polygraph examination would be in violation of probation.

The trial court denied the motion. In its written order, the court found that "the defendant had the option of NOT disclosing his sexual history, recognizing that his probation may be violated for his failure to do so." (Uppercase in original.) The court nevertheless concluded that defendant's obligation to answer questions about his sexual history did not create compelling circumstances requiring the issuance of *Miranda* warnings.

■ On appeal, defendant first contends that the trial court erred in concluding that his probation conditions did not create compelling circumstances that required Harris to give him *Miranda* warnings. The state argues that defendant did not preserve that argument and that, in any event, his probation conditions did not require Harris to give him *Miranda* warnings.

We begin with the state's contention that defendant's argument was not preserved. According to the state, the only argument defendant made before the trial court was that Harris was required to give *Miranda* warnings before questioning defendant about his prior acts of abuse. The state argues that defendant has changed his position on appeal by now arguing that the probation condition, in and of itself, overrode his free will and rendered his statements involuntary. Defendant counters that the issue has always been, and continues to be, whether the statements were voluntarily made. We agree with defendant.

In defendant's motion to suppress, he argued that his self-incriminating statements should be suppressed because of Harris's failure to give defendant *Miranda* warnings and, in the alternative, that defendant's statements were given involuntarily. Although the memorandum in support of his motion focused mainly on the issue of whether *Miranda* warnings were required, defendant also relied on authority considering the issue of constitutional voluntariness. Additionally, at the hearing on the motion, defendant argued not only that the circumstances required *Miranda* warnings, but also that they were sufficiently compelling to make any statement made by defendant involuntary, regardless of a *Miranda* warning. That is sufficient to apprise the state that the issue of voluntariness was in contention and to allow the trial court to correct any error and, thus, is sufficient to preserve the issue for appeal. *State v. Brown*, 310 Or 347, 356, 800 P2d 259 (1990).

■■ We turn to whether defendant's statements to his probation officer were voluntary. When reviewing the denial

of a motion to suppress, we are bound by the trial court's factual findings when there is evidence in the record that supports those findings, and we review the trial court's legal conclusions based on those findings for errors of law. *State v. Williams,* 191 Or App 270, 272, 81 P3d 743 (2003).

■ Both the federal and state constitutions guarantee that no person may be compelled in any criminal prosecution to testify against himself or herself. US Const, Amend V; Or Const, Art I, § 12. Under Article I, section 12, of the Oregon Constitution whether a person has been "compelled" to make a statement depends on whether the "defendant's will was * * * overborne and his capacity for self-determination was * * * critically impaired." *State v. Vu,* 307 Or 419, 424, 770 P2d 577 (1989).

We addressed whether certain probation conditions may render a statement compelled in violation of Article I, section 12, in *State v. Tenbusch,* 131 Or App 634, 886 P2d 1077, *rev den,* 320 Or 587, *cert den,* 516 US 991 (1995). Because our holding in that case relied on case law applying the Fifth Amendment to the federal constitution, however, we begin our analysis with a recapitulation of that federal law.

In *Minnesota v. Murphy,* 465 US 420, 104 S Ct 1136, 79 L Ed 2d 409 (1984), terms of the defendant's probation required that he participate in a treatment program and that he be truthful with his probation officer "in all matters." During his therapy, he told his therapist that he had committed a rape and murder before his conviction. He later confessed the same to his probation officer. The Minnesota Supreme Court suppressed the confession on the ground that its admission violated the defendant's Fifth Amendment privilege against compelled self-incrimination. *Id.* at 422-25.

The United States Supreme Court reversed the state court's decision. The Court first restated the general rule that the privilege against self-incrimination is not self-executing, but recognized that an exception to that general rule exists in situations where the state threatens to penalize the exercise of the privilege. Addressing the issue in the context of probation, the Court stated:

"[I]f the State, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution."

*Id.* at 435.

The Court explained that requiring the defendant to answer questions truthfully did not turn voluntary statements into compelled ones; the condition proscribed only false statements. The Court refused to read into that condition an additional restriction against raising legitimate objections to making statements that could be incriminating. *Id.* at 436-37. Accordingly, it rejected the defendant's argument that, because revocation of his probation was threatened if he was untruthful with his probation officer, he was compelled to make incriminating statements instead of claiming the privilege:

"On its face, [the defendant's] probation condition proscribed only false statements; it said nothing about his freedom to decline to answer particular questions and certainly contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege with respect to further criminal prosecution."

*Id.* at 437.

In *Tenbusch*, the defendant was charged with four counts of sex abuse and filed a motion to suppress self-incriminating statements made during participation in a treatment program that was part of his probation for a prior conviction. 131 Or App at 636-39. Expressly relying on *Murphy*, this court held that, if the defendant reasonably believed that a requested disclosure would be incriminating, he must assert the privilege against self-incrimination unless he could establish that he would have suffered a penalty for invoking that right. *Tenbusch*, 131 Or App at 644-45. We concluded that the conditions of the defendant's probation requiring him to tell the truth and take lie detector tests neither expressly nor implicitly foreclosed his right to object to making self-incriminating statements. *Id.* at 645. Therefore,

those conditions did not force him to choose between making incriminating statements and parole revocation. *Id.*

In this case, the state contends that the circumstances are not different from those in *Murphy* and *Tenbusch*. According to the state, defendant had an obligation to assert the privilege because he was not subject to an express or implied penalty for the mere assertion of the privilege and, therefore, his failure to assert the privilege is not excused. According to the state, defendant would be excused from the necessity of asserting the privilege against compelled self-incrimination "only if [defendant were] subject to an express condition prohibiting him from exercising the privilege."

Defendant argues that his failure to invoke his right to avoid compelled self-incrimination is inconsequential; the privilege is self-executing where "the assertion of the privilege is penalized so as to foreclose a free choice to remain silent." *Murphy*, 465 US at 434. He distinguishes *Tenbusch* and *Murphy* because, in those cases, the state neither expressly nor implicitly penalized the defendant's right to object to making self-incriminating statements. He argues that the defendants in *Murphy* and *Tenbusch* had the option either to make the incriminating statements or to invoke their right against self-incrimination without the threat of parole revocation. Defendant contends, however, that his statement was compelled because—as the trial court expressly found—he faced the threat of a probation violation for invoking his right to remain silent.

We agree with defendant. As we have noted, the trial court found that "the defendant had the option of NOT disclosing his sexual history, *recognizing that his probation may be violated for his failure to do so.*" (Emphasis added; uppercase in original.) The evidence in the record—in particular, Harris's testimony that a failure to submit a complete list of victims "is a violation of probation"—supports that finding. That is precisely the situation forbidden by *Murphy* and *Tenbusch*. If defendant had no choice other than to disclose or face revocation of his probation, *Murphy* and *Tenbusch* hold that any subsequent statement was made involuntarily.

465 US at 435; 131 Or App at 644-45. The trial court erred in concluding otherwise.

■ The state argues that, even if the trial court erred in concluding that the probation condition rendered defendant's statement to Harris involuntarily obtained, the trial court nevertheless correctly denied the motion to suppress because defendant later provided detective Coates the same evidence after having been given *Miranda* warnings. The state correctly notes that a confession obtained in violation of a defendant's right to be free from state-compelled self-incrimination does not necessarily render a subsequent confession inadmissible. *State v. Dinsmore*, 182 Or App 505, 516, 49 P3d 830 (2002). A subsequent statement is not "tainted by the prior illegality unless there is a causal connection between the unlawful conduct and the discovery of the evidence." *State v. Chambers*, 147 Or App 626, 631, 938 P2d 793, *rev den*, 327 Or 82 (1997). " 'All evidence is not 'fruit' simply because it would not have come to light but for the illegal actions of the police.' " *Id.* (quoting *State v. Paz*, 31 Or App 851, 869, 572 P2d 1036 (1977), *rev den*, 282 Or 189 (1978). The critical question in determining whether the subsequent confession is fruit of the first is whether "the evidence to which the instant objection is made has been come at by exploitation of that illegality or by means sufficiently distinguished to be purged of the primary taint." *Id.* (quoting *Wong Sun v. United States*, 371 US 471, 488, 83 S Ct 407, 9 L Ed 2d 441 (1963)).

Defendant argues that his confession to Coates is inadmissible because it was the fruit of his prior, unconstitutionally compelled statements to Harris. According to defendant, Coates would not have sought to interview defendant about the abuse of A without the information obtained as a result of defendant's prior statements to Harris. The state argues that defendant failed to establish the necessary factual nexus between his statements to Harris and his subsequent voluntary confession to Coates.

The state is correct. The only evidence presented at the hearing on the motion to suppress regarding the police use of defendant's involuntary statements to Harris is

Harris's testimony that he relayed the substance of defendant's confession to law enforcement. The parties stipulated that Coates interviewed defendant a month later and that, before the interview, she read defendant his *Miranda* warnings, that defendant had no questions about his rights and stated that he understood them, and that defendant then provided an incriminating statement to the detective. There was no evidence that defendant's statement to Coates was in any way connected to his statement to Harris, nor was there any evidence from which to conclude that police exploited defendant's statements to Harris in order to obtain the confession to Coates. It was defendant's burden initially to demonstrate that the police exploited the prior illegality in order to obtain defendant's subsequent incriminating statements. *State v. Johnson*, 335 Or 511, 520-21, 73 P3d 282 (2003); *State ex rel Juv. Dept. v. O'Farrell*, 191 Or App 627, 632, 83 P3d 931 (2004). On the record before us, defendant failed to meet his initial burden.

In conclusion, although the trial court erred in concluding that defendant's statements to Harris were voluntary, there was no evidence adduced at the hearing on defendant's motion to suppress that would permit the court to conclude that police exploited that illegally obtained statement in order to obtain defendant's subsequent confession to Coates. The trial court, therefore, did not err in admitting defendant's confession to Coates.

Affirmed.