Filed 4/21/15  P. v. Delgado CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SALVADOR TERONES DELGADO,<br><br>    Defendant and Appellant. | H041059<br>(Santa Clara County<br>Super. Ct. No. C1370392) |

## I.  INTRODUCTION

Defendant Salvador Terones Delgado was placed on formal probation for three years after he pleaded no contest to indecent exposure with a prior conviction (Pen. Code, § 314, subd. 1; count 1)[1] and misdemeanor failure to register as a sex offender (§ 290.015, subd. (a); count 2).  Count 1 involved defendant masturbating in a laundromat in the presence of an employee.  The trial court imposed numerous probation conditions, including sex offender treatment conditions mandated by section 1203.067.  As required by subdivision (b)(2), the court ordered defendant to "enter, participate and complete an approved sex offender management program" and, as required by subdivision (b)(3)[2] that

---

[1]  All statutory references are to the Penal Code.  All undesignated subdivision references are to section 1203.067.

[2]  Subdivision (b)(3) requires a "[w]aiver of any privilege against self-incrimination and participation in polygraph examinations, which shall be part of the sex offender management program."  Subdivision (b)(3) is ambiguous in that the phrase "[w]aiver of any privilege against self-incrimination" can be read narrowly as applying only to "polygraph examinations" or more broadly to apply to "the sex offender

*(Continued)*

he "waive any privilege against self-incrimination and participate in polygraph examinations, which shall be part of the sex offender management program."[3]

On appeal, defendant challenges the requirement that he waive any privilege against self-incrimination as violating the Fifth Amendment of the United States Constitution.[4]  As we will explain, we conclude that the Fifth Amendment waiver required by subdivision (b)(3) is invalid on its face, and we will order it stricken from defendant's probation conditions.

## II.  DISCUSSION

### A.    THE FIFTH AMENDMENT

The Fifth Amendment privilege against compulsory self-incrimination "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." (*Kastigar v. United States* (1972) 406 U.S. 441, 444-445.)   The privilege extends to answering questions posed by probation officers (*Minnesota v. Murphy* (1984) 465 U.S. 420, 426 (*Murphy*)) and polygraph examiners (*People v. Miller* (1989) 208 Cal.App.3d 1311, 1315; *Brown v. Superior Court* (2002) 101 Cal.App.4th 313, 321).  It is undisputed that, absent the subdivision (b)(3) waiver, defendant could assert his Fifth

management program."  While defendant focuses on the waiver in the context of the polygraph examination, we find the required waiver unconstitutional under either construction.

[3]  We grant defendant's request for judicial notice of the California Sex Offender Management Board's Post-Conviction Sex Offender Polygraph Certification Standards, dated June 2011.  (See http://www.casomb.org/docs/certification_standards/polygraph_standards.pdf.)

[4]  This issue is currently pending before the California Supreme Court.  (*People v. Friday* (2014) 225 Cal.App.4th 8, review granted July 16, 2014, S218288; *People v. Garcia* (2014) 224 Cal.App.4th 1283, review granted July 16, 2014, S218197; *People v. Klatt* (2014) 225 Cal.App.4th 906, review granted July 16, 2014, S218755.)

2

Amendment privilege and elect not to provide incriminating information as part of the sex offender management program.

Because the Fifth Amendment speaks of compulsion, the privilege is not self-executing and as a general rule a person must invoke it by refusing to answer incriminating questions. If it is not invoked, any incriminating answers will be deemed voluntary and not protected by the privilege. (*Murphy*, *supra*, 465 U.S. at p. 427.) But an exception exists "where the assertion of the privilege is penalized so as to '[foreclose] a free choice to remain silent, and … [compel] … incriminating testimony.' [Citation]." (*Id.* at p. 434.) In such a situation, the privilege need not be asserted because the incriminating disclosure is deemed compelled by the threat of penalty. (*Ibid.*) Under this penalty exception, an incriminating statement is deemed compelled and cannot be used against the person in a criminal proceeding. (*Ibid.*) Conversely, if a penalty is imposed for exercising the right to remain silent, courts have struck the penalty as violating the Fifth Amendment. For example, in *Lefkowitz v. Turley* (1973) 414 U.S. 70, after refusing to testify before a grand jury, two contractors were disqualified under state law from entering into contracts with public authorities for five years. The Supreme Court found the law violated the Fifth Amendment because it attached a penalty to an individual's assertion of the right to remain silent. (*Id.* at p. 83.)

## B. THE PROBATION CONDITION AND WAIVER

Section 1203.067, subdivision (b)(3) requires defendant, as a condition of probation, to waive his privilege against self-incrimination. Defendant argues that this statutory waiver, incorporated into his probation conditions, is facially unconstitutional because it creates an "impermissible penalty situation" described in *Murphy*.

In *Murphy*, the Supreme Court addressed whether a probationer's incriminating statements to his probation officer were made under threat of penalty, thereby requiring their suppression at a criminal trial. The defendant in *Murphy* admitted to his probation officer that he committed a rape and murder several years before the offense for which he

3

was on probation, and that admission resulted in first degree murder charges. (*Murphy*, *supra*, 465 U.S. at p. 425.) At trial, Murphy challenged the admissibility of the incriminating statement made to his probation officer. Invoking the penalty exception, Murphy argued unsuccessfully that a probation condition requiring that he be truthful with his probation officer in all matters coerced him to admit the rape and murder. (*Id*. at pp. 434-439.) Although the court concluded that Murphy's statements were not compelled and were therefore voluntary and admissible in his criminal trial, the application of *Murphy*'s reasoning to the probation condition at issue here demands a different result.

Murphy formulated a test to determine whether the condition requiring the probationer to be truthful constituted a "threat of punishment for reliance on the privilege." (*Murphy*, *supra*, 465 U.S. at p. 435.) *Murphy* recognized that the state "may require a probationer to appear and discuss matters that affect his probationary status[,]" and that such a requirement, without more, is no different than the state compelling an individual to appear and testify. Both witness and probationer are required to answer unless questions call for incriminating answers. (*Ibid*.) *Murphy* went on to determine that revocation of probation qualifies as a penalty: "[I]f the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation[.]" (*Ibid*.) In such case, the court explained, the state can insist on answers to incriminating questions "and hence sensibly administer its probation system" provided it eliminates the threat of incrimination. (*Id*. at p. 435, fn. 7.)

With these principles in mind, the court framed its inquiry as whether "Murphy's probation conditions merely required him to appear and give testimony about matters relevant to his probationary status or whether they went further and required him to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent." (*Murphy*, *supra*, 465 U.S. at p. 436.) The court concluded that the

4

condition requiring Murphy to be truthful with his probation officer in all matters did not rise to a threat of revocation. Indeed, the condition "said nothing about his freedom to decline to answer particular questions and certainly *contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege* with respect to further criminal prosecution." (*Id*. at p. 437, italics added.) The probation condition did not "attach an impermissible penalty to the exercise of the privilege against self-incrimination" because it did not require Murphy to choose between incriminating himself and jeopardizing his probation by remaining silent. (*Id*. at pp. 437-438.)

Applying *Murphy*'s test here leads us to conclude that the challenged waiver imposes an impermissible choice between self-incrimination and conditional liberty. Subdivision (b)(3) requires that the privilege against self-incrimination be waived in order to be granted probation at all. The Attorney General argues that the required waiver does not violate the Fifth Amendment "because the penalty exception described in *Murphy* necessarily applies to all statements that a probationer makes under the compulsion of the subdivision (b)(3) probation condition." But that interpretation would result in blanket immunity for probationers to disclose crimes during their participation in the sex offender treatment program knowing that such disclosures, and their derivatives, cannot be used against them in criminal proceedings. (*Kastigar*, *supra*, 406 U.S. at p. 462 [evidence derived from compelled testimony cannot be used against a person in a criminal proceeding].) Striking the waiver from subdivision (b)(3) will still allow all questions to be posed to participants in the sex offender management program, who may then choose whether to assert their right to remain silent. Whether answers will be compelled, questions reformulated, immunity granted, or probation revoked can be addressed on a question-by-question and case-by-case basis.

C.    **AVAILABILITY OF THE PENALTY EXCEPTION**

Our conclusion is consistent with other jurisdictions' treatment of the penalty exception in the context of probation conditions. In *State v. Eccles* (1994) 179 Ariz. 226

5

(*Eccles*), the Arizona Supreme Court was presented with a waiver nearly identical to that required under subdivision (b)(3). The Arizona probation condition required the defendant, as part of a sex offender treatment program, to waive his right against self-incrimination and answer truthfully any questions posed by treatment program agents including his probation officer and polygraph examiner. (*Eccles,* at p. 227.) Applying *Murphy*, *Eccles* held that the condition "plainly took the 'extra, impermissible step' by attempting to require defendant to waive his right against self-incrimination under penalty of having his probation revoked." (*Id.* at p. 228, quoting *Murphy*, *supra*, at p. 436.) *Eccles* read *Murphy*'s prohibition against a state revoking probation for a legitimate exercise of the Fifth Amendment privilege as also proscribing a state from imposing a waiver of the privilege as a condition of probation. (*Eccles,* at p. 228.)

In *State v. Gaither* (2004) 196 Or.App. 131 (*Gaither*), the Oregon Court of Appeals determined that a probationer's statement was involuntary under *Murphy*. The sex-offender probationer in *Gaither* was required to " 'promptly and truthfully answer all reasonable inquiries' of his probation officer," fully disclose his sexual history, and identify all victims of any past sexual misdeeds. (*Id.* at p. 133.) Under threat of a probation violation for invoking his right to remain silent, the probationer told his probation officer that he had committed a sexual offense against a minor, and he was then charged with the offense. (*Ibid.*) Suppressing the admission, the Oregon court observed: "That is precisely the situation forbidden by *Murphy* … . If [the] defendant had no choice other than to disclose or face revocation of his probation, *Murphy* … hold[s] that any subsequent statement was made involuntarily." (*Id.* at p. 138.)

In *United States v. Saechao* (2005) 418 F.3d 1073 (*Saechao*), the Ninth Circuit addressed an Oregon condition which required a probationer to " 'promptly and truthfully answer all reasonable inquiries' " or face revocation of probation. Like *Gaither*, *Saechao* upheld the trial court's order suppressing evidence obtained as a result of the probationer's incriminating responses. The court concluded that use of the incriminating

6

information in a criminal proceeding against the probationer would be unconstitutional under *Murphy* because the probationer was forced to choose between exercising his right to remain silent and jeopardizing his conditional liberty. (*Id*. at p. 1075).

The Ninth Circuit addressed another probation penalty situation in *United States v. Antelope* (2005) 395 F.3d 1128 (*Antelope*). *Antelope* illustrates the type of penalty discussed (though not found) in *Murphy* and its impermissibly coercive effect in this context. In *Antelope*, the probationer refused to complete a sexual history autobiography and participate in a "full disclosure polygraph" as part of a sexual abuse recovery program unless he was granted immunity, even though he desired to continue in treatment. (*Id.* at pp. 1131-1132.) The district court revoked probation and imposed a prison sentence. (*Id*. at p. 1132.)

*Antelope* analyzed the probationer's Fifth Amendment claim under *McKune v. Lile* (2002) 536 U.S. 24 (*McKune*), a then recently decided Supreme Court case addressing a state prison inmate's privilege against self-incrimination in the context of the prison's sex offender treatment program. The treatment program in *McKune* required participants to divulge all prior sexual activities regardless of whether they constituted uncharged criminal offenses. (*Id.* at p. 30.) Refusal to participate in the program would result in transfer to a maximum security housing unit and reduced privileges such as visitation, work opportunities, and television access. The inmate refused and asserted the privilege against self-incrimination. (*Id*. at pp. 30-31.)

*McKune* was a fractured decision, with the plurality and Justice O'Connor concluding that a loss of prison privileges did not amount to compulsion under the Fifth Amendment. (*McKune*, *supra*, 536 U.S. at p. 29 [plurality]; *id*. at pp. 48-49 [O'Connor, J.].) However, Justice O'Connor recognized that although "[n]ot all pressure necessarily 'compels' incriminating statements" (*id*. at p. 49), a penalty involving longer incarceration would not be constitutionally permissible. (*Id*. at p. 52.) Based on Justice O'Connor's view, the *Antelope* court concluded that the probationer's privilege against

7

self-incrimination was violated because he did suffer additional incarceration for exercising his right to remain silent. (*Antelope*, *supra*, 395 F.3d at p. 1138.) *Antelope* thus presented the penalty situation described in *Murphy*. (*Id*. at p. 1138, fn. 4.)[5]

*Eccles*, *Gaither*, and *Saecheo*, together with *Antelope*'s recognition that *Murphy* continues to set the standard for compulsion in probation penalty cases, support our conclusion that the waiver required by section 1203.067, subdivision (b)(3) violates the Fifth Amendment on its face. The denial of probation which results from refusal to accept the mandatory condition attaches an impermissible penalty (a prison sentence) to the exercise of the Fifth Amendment privilege against self-incrimination.

**D.** **CHAVEZ AND MALDONADO DISTINGUISHED**

Citing *Chavez v. Martinez* (2003) 538 U.S. 760 (*Chavez*) and *Maldonado v. Superior Court* (2012) 53 Cal.4th 1112 (*Maldonado*), the Attorney General argues that the waiver alone is not unconstitutional because a Fifth Amendment violation cannot occur until a compelled statement is used against a defendant in a criminal proceeding. In *Chavez*, a federal civil rights action brought under Title 42 U.S.C. section 1983, the plaintiff was questioned by a parole officer without *Miranda* warnings while receiving medical treatment for gunshot wounds received in a confrontation with police officers. The plaintiff alleged that the emergency room questioning violated both his Fifth Amendment and substantive due process rights. (*Chavez*, *supra*, 538 U.S. at p. 765.) The Ninth Circuit upheld the denial of qualified immunity to the parole officer,

---

[5] Relying on *Antelope*, defendant asserts that submission to a polygraph examination under subdivision (b)(3) violates the Fifth Amendment because the examiner is required to investigate past sex offenses, including potentially uncharged offenses. *Antelope* did not hold that the sex abuse recovery program at issue in that case, including its polygraph component, violated the Fifth Amendment. Standing alone, the requirement that defendant participate in polygraph examinations does not infringe on his Fifth Amendment right against self-incrimination because it does not preclude him from exercising that right. (*People v. Miller*, *supra*, 208 Cal.App.3d 1311, 1315.)

concluding that the " 'right to be free from coercive interrogation' " was clearly established under the Fifth and Fourteenth Amendments.  (*Id*. at pp. 765-766.)  The United States Supreme Court reversed, concluding that the plaintiff could not allege a Fifth Amendment violation because he was neither prosecuted for the crime nor compelled to be a witness against himself in a criminal case.  (*Id*. at p. 766.)  The court reasoned that the text of the Fifth Amendment does not support the conclusion that mere compulsive questioning, without more, violates the Constitution.  (*Id*. at p. 767.)

In *Maldonado*, the criminal defendant asserted a mental-state defense.  The prosecution had obtained an order under section 1054 (providing for reciprocal discovery) requiring the defendant to submit to a mental examination by prosecution-selected experts, and a disagreement arose regarding disclosure of the examination results to the prosecution.  (*Maldonado*, *supra*, 53 Cal.4th at p. 1118.)  Relying in part on *Chavez*'s focus that a " 'core' Fifth Amendment violation is completed, not merely by official extraction of self-incriminatory answers from one who has not waived the privilege, but only if and when those answers *are used in a criminal proceeding* against the person who gave them" (*id.* at p. 1128, citing *Chavez, supra*, pp. 766-773), the California Supreme Court concluded that release of the examination results to the prosecution before the defendant actually presented his defense at trial was not precluded by the Fifth Amendment.  (*Maldonado,* at p. 1141.)

*Chavez* and *Maldonado* establish that merely eliciting an incriminating statement does not violate the Fifth Amendment.  But neither case controls here because neither addresses whether the state can condition the availability of probation on giving up the right to remain silent.  That question, in our view, is answered by *Murphy* because denial of probation is itself a penalty which compels the waiver.

### III.  DISPOSITION

In light of our conclusion that the waiver mandated by Penal Code section 1203.067, subdivision (b)(3) facially violates the Fifth Amendment, we strike the words

9

"waive any privilege against self-incrimination and" from the probation condition implementing that subdivision.  As modified, the judgment is affirmed.

_____

Grover, J.

**WE CONCUR:**

_____

Rushing, P. J.

_____

Márquez, J.